No. 01-723

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 97

TRUSTEES OF INDIANA UNIVERSITY,

        Plaintiff and Respondent,

   v.

DOUGLAS A. BUXBAUM, as Personal Representative
of the Estate of Christopher D. Jones; BRUCE M. BITTNER,
Co-Personal Representative of the Estate of Derek T. Krueger;
OTTO KRUEGER, Individually and as Co-Personal Representative
of the Estate of Derek T. Krueger; and JILL J. KRUEGER, Individually,

        Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
                     In and for the County of Lewis and Clark, Cause No. BDV-2000-284,
                     The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Monte D. Beck, John J. Richardson (argued), Beck, Richardson & Amsden,
                PLLC, Bozeman, Montana

        For Respondent:

                Tom W. Stonecipher (argued), John H. Tarlow, Tarlow & Stonecipher,
                Bozeman, Montana

                Michael R. Fruehwald, Barnes & Thornburg, Indianapolis, Indiana

        For Amicus Montana Trial Lawyers Association:

                Dane J. Durham, Attorney at Law, Missoula, Montana

        For Amicus Montana Defense Trial Lawyers, Inc.:

                James A. Donahue, Davis, Hatley, Haffeman & Tighe, Great Falls, Montana

                          Orally Argued and Submitted:  September 10, 2002
                                      Decided:  April 24, 2003

Filed:

                                          Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1      In the summer of 1998, three Indiana University students traveled to Montana to assist an Indiana University professor with an instructional project devoted to forest habitat. While in Montana, the three students and a fourth Indiana resident were involved in a single vehicle accident on Interstate 90 between Cardwell and Three Forks, Montana. The accident resulted in the deaths of Christopher Jones, Michael Bowling, and Derek Krueger. Multiple lawsuits ensued, including a suit filed by the Krueger Estate against the Respondent Indiana University and the Appellant Jones Estate. The Jones Estate demanded that the University, a self-insured entity which purported to insure the vehicle in question, defend it against the negligence suit filed by the Krueger Estate.

¶2      The University subsequently filed a declaratory judgment action in the First Judicial District Court, Lewis and Clark County, to ascertain whether it had a duty to indemnify the Jones Estate. The District Court concluded that the University owed a duty to the Jones Estate to indemnify it of any liability arising out of the automobile accident. However, the District Court denied the Jones Estate's request for attorney fees incurred in the declaratory judgment action. The Jones Estate appeals from the District Court's judgment with regard to the denial of attorney fees. We reverse and remand.

¶3      The sole issue on appeal is whether the District Court erred when it denied the Jones Estate's request for attorney fees incurred in the declaratory judgment action.

BACKGROUND

¶4      Since the 1940s, Indiana University has owned and operated a geological field station near Cardwell, Montana. The University utilizes the field station to further its geology

2

students' studies during the summer months. Each spring, geology students from the University drive a fleet of vehicles to the field station. At the end of each summer, the students return the vehicles to the University motor pool in Bloomington, Indiana. In 1994, the University permanently transferred a University-owned 1989 Chevrolet Suburban ("Old No. 3"), a vehicle licensed and registered in the state of Indiana, to the field station.

¶5 In the summer of 1998, Dr. Raymond Russo, a biology professor from the University, visited the field station while on sabbatical to conduct a research project, called the Virtual Forest Project. The Virtual Forest Project was administered by the University and grant funded by the Indiana Forestry Education Foundation. Dr. Russo conducted the Virtual Forest Project to create an instructional CD-ROM program devoted to forest habitat. To aid with the project development, Dr. Russo recruited three project assistants from Indiana, Christopher Jones, Michael Bowling, and Anicca Brumbaugh. When Dr. Russo recruited the assistants, they were all undergraduate or graduate students at the University. The assistants traveled from Indiana to the field station in their own vehicles. However, the field station director, Professor James Brophy, permitted Dr. Russo and the assistants to use Old No. 3 while residing at the field station.

¶6 On July 12, 1998, Jones, Bowling, Brumbaugh, and Brumbaugh's visiting boyfriend, Derek Krueger, departed the field station in Old No. 3 for a white water rafting trip. While en route, the driver, Jones, lost control of the vehicle when the tread allegedly separated from one of the vehicle's tires on Interstate 90 between Cardwell and Three Forks, Montana. The single vehicle accident resulted in the deaths of Jones, Bowling, and Krueger. Brumbaugh survived the accident but sustained significant injuries.

¶7    At the time of the accident, Old No. 3 was not covered by a traditional automobile insurance policy. However, in 1987, the University established a self-insurance program to assume the risk of liability, up to $1 million, for certain kinds of incidents, including the type of accident that occurred on July 12, 1998. The University also purchased a $15 million excess liability policy from TIG Insurance Company which was in effect at the time of the accident. The University never filed a certificate of self-insurance with the state of Indiana or Montana.

¶8    In November 1999, several parties ("Krueger Estate"), individually and as personal representatives of the estate of Derek Krueger, filed suit against multiple defendants, including the University and the Jones Estate.[1] On December 30, 1999, the Jones Estate demanded that the University defend it against the negligence claim brought by the Krueger Estate. The University, under a reservation of rights, retained independent counsel to defend the Jones Estate against the allegations. On May 8, 2000, the University filed a declaratory judgment action against the Jones Estate and the Krueger Estate. The University argued that it maintained no obligation to defend or indemnify the Jones Estate.

¶9    On December 4, 2000, all three parties, the University, the Jones Estate, and the Krueger Estate, filed motions for summary judgment. The Jones Estate argued that the University must defend and indemnify it based on the doctrine of equitable estoppel and

---

[1] Multiple lawsuits were filed following the July 12, 1998, accident, in addition to the claims filed by the Krueger Estate. The University filed a cross-claim against the Jones Estate in the Krueger Estate action. Brumbaugh and the Bowling Estate filed claims against the University and the Jones Estate. The Jones Estate filed a negligence action against the University. Further, the Jones Estate, the Krueger Estate, the Bowling Estate, and Brumbaugh filed product liability claims against various tire manufacturers and recappers. However, none of those claims are relevant to the case at bar.

4

because insurance coverage existed pursuant to (1) a resolution passed by the Trustees of Indiana University in 1971, (2) the University's Self-Insurance Fund Document, and (3) the University's Self-Insurance Fund Policy on Auto Coverage. The Krueger Estate also argued that the University should indemnify the Jones Estate, under similar theories. The University claimed that, under the circumstances presented, no contractual, common law, or statutory authority existed which obligated it to defend and indemnify the Jones Estate against the claims filed by the Krueger Estate.

¶10 On February 8, 2001, the District Court denied all of the motions for summary judgment. In so doing, the District Court concluded that: the University was under no common law duty to indemnify the Jones Estate, i.e., neither promissory nor equitable estoppel apply; the 1971 resolution does not impose a duty on the University to indemnify the Jones Estate; the University does not constitute an insurance company, therefore, the statutory obligations imposed upon insurance companies have no application here; Jones was not a third-party beneficiary of the University's risk management policy; Jones was a University employee during his time at the field station; the University is self-insured but the "guidelines" developed by the director of the Risk Management Office, Larry Stephens, are "ambiguous, confusing, and frequently contradictory"; a factual due process question remains regarding whether the University appropriately applied its risk management practices to this case in denying coverage; and a factual question remains as to whether Jones waived any right to indemnity in the Assumption of Risk form. The case proceeded to a non-jury trial on March 19, 2001.

5

¶11 Following the non-jury trial, the District Court entered its Findings of Fact, Conclusions of Law, and Order on May 17, 2001. The District Court concluded that the University's self-insurance documents intended to provide coverage for permissive users of University vehicles, such as Jones. The court concluded that Jones did not waive the right to indemnification when he signed the Assumption of Risk form. Therefore, the Jones Estate maintained a property interest in the indemnification. The court found that the University relied upon "[un]ascertainable, ambiguous, and confusing" standards in administering its self-insurance program. In handling the Jones Estate's demand for coverage, the District Court found the University's "application of the 'standards' to be arbitrary and capricious." Accordingly, the District Court concluded that the University had to "provide self-insurance coverage and indemnification to the Jones Estate as a result of the July 12, 1998, automobile accident . . . ." The District Court also initially awarded the Jones Estate costs, expenses, and attorney fees incurred in defending the declaratory judgment action.

¶12 On July 27, 2001, pursuant to Rule 59(g), M.R.Civ.P., the University moved the District Court to alter its judgment to strike the award of attorney fees and expenses. The University argued that no statutory or contractual basis existed to support such an award. Further, the University insisted that none of the common law doctrines authorizing an award of attorney fees applied to this case.

¶13 The District Court agreed with the University that no statutory or contractual provisions existed to support an award of attorney fees and expenses. The court noted a court's equitable power to enter such an award pursuant to *Foy v. Anderson* (1978), 176 Mont. 507, 580 P.2d 114. However, the District Court also recognized the "frivolous or

6

malicious action" caveat placed upon its equitable power to award attorney fees, as stated in *National Cas. Co. v. American Bankers*, 2001 MT 28, 304 Mont. 163, 19 P.3d 223. The District Court concluded that the University did not force the Jones Estate to defend against a frivolous or malicious action. Therefore, the court struck the award of attorney fees and expenses from its May 17, 2001, ruling.

¶14 On September 27, 2001, the Jones Estate filed a notice of appeal from the District Court's order with regard to the Rule 59(g), M.R.Civ.P., motion. This appeal implicates the award of attorney fees and expenses only. The University has not appealed from the May 17, 2001, judgment in favor of the Jones Estate and Krueger Estate.

STANDARD OF REVIEW

¶15 A district court's underlying decision as to whether legal authority exists to award attorney fees is a conclusion of law. *Braach v. Graybeal*, 1999 MT 234, ¶ 6, 296 Mont. 138, ¶ 6, 988 P.2d 761, ¶ 6. We review conclusions of law to determine whether the district court's interpretation of the law is correct. *Trifad Entertainment, Inc. v. Anderson*, 2001 MT 227, ¶ 27, 306 Mont. 499, ¶ 27, 36 P.3d 363, ¶ 27. Further, a district court's grant or denial of attorney fees is a discretionary ruling which we review for abuse of discretion. *National Cas. Co.*, ¶ 27.

DISCUSSION

¶16 Did the District Court err when it denied the Jones Estate's request for attorney fees incurred in the declaratory judgment action?

¶17 As indicated above, the District Court initially awarded attorney fees and expenses to the Jones Estate because it found the University's "application of the [self-insurance]

7

'standards' to be arbitrary and capricious." However, upon consideration of the University's Rule 59(g), M.R.Civ.P., motion, the District Court retracted the award. It did so for two reasons–it concluded that (1) no statutory or contractual provision authorizes such an award and (2) the equitable exception to the American Rule recognized in *Foy* does not apply as the University did not force the Jones Estate to defend against a frivolous or malicious action. As for the Jones Estate's entreaties to modify the existing state of the law, the District Court stated:

> [T]he Jones Estate suggests that it is about time that the courts of Montana made provision for the award of attorney fees in cases such as this. However, this Court is constrained to follow the orders it has received from the Montana Supreme Court. If this indeed is such a time for a change in the law, then the Jones Estate can make that argument to the Montana Supreme Court.

¶18 The Jones Estate cites three reasons why the District Court abused its discretion when it rescinded the award of attorney fees and expenses. First, the Jones Estate argues that statutory authority exists to support such an award, i.e., §§ 27-8-311 and -313, MCA, of the Uniform Declaratory Judgments Act ("UDJA"). Second, the Jones Estate maintains that we should overrule *Yovish v. United Services Auto. Ass'n* (1990), 243 Mont. 284, 794 P.2d 682, and afford attorney fees in declaratory judgment actions where an insured prevails on a duty to indemnify issue, under a breach of contract theory.[2] Finally, the Jones Estate submits that the District Court's finding of "arbitrary and capricious" conduct is tantamount to the "frivolous or malicious" caveat imposed upon a court's equitable powers to award attorney

---

[2] Essentially, the Jones Estate requests that we expand one of the exceptions to the American Rule. Such an expansion would entitle insureds to relief in the form of attorney fees in situations where an insurer breaches its duty to indemnify under a similar rationale employed in breach of the duty to defend cases, such as *Home Insurance Company v. Pinski Brothers, Inc.* (1972), 160 Mont. 219, 500 P.2d 945, and its progeny.

8

fees. *See National Cas. Co.*, ¶ 28. Irrespective of which rationale prevails, the Jones Estate maintains that equity compels an award because:

> The present case is a good example of the unfairness of the current law. The Jones Estate incurred $51,417.05 in fees and expenses because Indiana University chose to bring a declaratory judgment action in which the District Court found that it acted arbitrarily and capriciously in denying coverage. Because of the exceptionally high standard set by the *Foy* exception, the Jones Estate cannot be made whole without the further delay and expense of a bad faith action against the University.

¶19 Montana follows the general American Rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision. *Mountain West Farm Bureau v. Hall*, 2001 MT 314, ¶ 13, 308 Mont. 29, ¶ 13, 38 P.3d 825, ¶ 13. However, we have recognized equitable exceptions to the American Rule. *See, e.g., Mountain West,* ¶ 14 (awarding attorney fees when a party incurs legal fees to establish a common fund which avails non-participating beneficiaries); *National Cas. Co.*, ¶ 28 (awarding attorney fees where a party has been forced to defend against a wholly frivolous or malicious action); *School Trust v. State ex rel. Bd. of Com'rs*, 1999 MT 263, ¶ 67, 296 Mont. 402, ¶ 67, 989 P.2d 800, ¶ 67 (awarding attorney fees pursuant to the private attorney general theory).

¶20 On appeal, the Jones Estate does not suggest entitlement to attorney fees on account of a contractual provision. In fact, in its Order on Cross-Motions for Summary Judgment, the District Court found:

> [T]here is no contract involved in Indiana University's self-insurance operation. It is true that the risk management office assesses costs of the self-insurance fund to various departments, but those departments are not separate legal entities that contract for insurance. Rather, they budget a portion of their funds towards the services of their risk management office.
>
> . . . .

9

In the view of this Court, there is no contract in this case since Indiana University has not contracted with anyone. As noted by the Trustees of Indiana University there is one legal entity and that is the Trustees of Indiana University. The arrangements that Indiana University may have with its various departments are not contracts since the departments are not separate entities apart from Indiana University. Thus, since there is no "contract," there can be no third-party beneficiary of that "contract." [Citations omitted.]

¶21    Likewise, the District Court concluded:

In our quest to see if there is any duty of indemnity owed by Indiana University, we must determine if Indiana University is acting as an insurance company. The Court is able to rule that Indiana University is not an insurance company nor is it an insurer. . . .

Defendants in this case have not cited this Court any persuasive authority that would make the Trustees of Indiana University insurers or an insurance company because they are self-insured or have a risk management office. . . . [S]elf-insurance is the antithesis of insurance. . . . Further, there is no contract involved in Indiana University's self-insurance operation.

. . . .

[T]he Court hereby rules that the Trustees of Indiana University are not operating as an insurance company or offering an insurance policy through the operation of their risk management office. Thus, rules that place statutory requirements on insurance companies have no application here. [Citations omitted.]

The Jones Estate has not challenged these findings on appeal. Thus, since the District Court concluded that no contract exists and that this case is not an insurance case, we decline to examine an award of attorney fees within the context of the insurance exception announced in *Pinski Brothers*.

¶22    Conversely, the Jones Estate maintains that statutory authority supports an award of attorney fees. The Jones Estate submits that the plain language of the UDJA, specifically §§ 27-8-311 and -313, MCA, vests discretionary authority in district courts to award attorney fees in declaratory judgment actions. The University counters that (1) the Jones Estate failed

10

to assert the UDJA arguments before the District Court and we should, therefore, refuse to address those issues on appeal and, alternatively, (2) this Court has repeatedly held that no section of the UDJA authorizes an award of attorney fees. We will address each of the University's contentions in turn.

¶23 The University claims that we "should not consider this line of argument, for the Appellant never raised it in the trial court." In its answer to the Complaint for Declaratory Judgment, the Jones Estate requested that the District Court "[a]ward the Defendant his fees and costs in defending this action; and . . . [a]ward the Defendant such other relief as the Court may deem just and proper." At one juncture, the Jones Estate referred the court to § 27-8-311, MCA, with regard to the recovery of costs, but, as the University indicates, the Jones Estate never explicitly referenced § 27-8-313, MCA.

¶24 Regardless of whether the Jones Estate expressly invoked §§ 27-8-311 and -313, MCA, the parties clearly litigated the underlying coverage dispute within the confines of the UDJA. In fact, they did so at the University's behest. Further, the Jones Estate notified all of the interested litigants of its request for attorney fees at the action's inception. Now, the party which once sought refuge from the UDJA seeks to preclude consideration of particular discretionary provisions of the act, provisions which a court might arguably invoke sua sponte pursuant to Rule 54(c), M.R.Civ.P.[3] *See In re Estate of Bayers*, 1999 MT 154, 295 Mont. 89, 983 P.2d 339. The intimation that we should observe select portions of the UDJA

---

[3] Rule 54(c), M.R.Civ.P., provides in pertinent part that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."

11

in declaratory judgment actions and eschew others is not well taken. Moreover, as a matter of fairness, both parties have had the opportunity to fully brief and argue the provisions' application on appeal. Therefore, we reject the University's attempts to bar consideration of §§ 27-8-311 and -313, MCA, with respect to an award of attorney fees.

¶25 Alternatively, the University cites three cases for the proposition that "no section of the [UDJA] . . . authorizes an award of attorney fees," *State ex rel. Dept. of Health v. Lincoln Cty.* (1978), 178 Mont. 410, 584 P.2d 1293, *McKamey v. State* (1994), 268 Mont. 137, 885 P.2d 515, and *Dorwart v. Caraway*, 1998 MT 191, 290 Mont. 196, 966 P.2d 1121. In *State ex rel. Dept. of Health*, the State Department of Health and Environmental Sciences ("DHES") filed a complaint against Lincoln County and its commissioners to preclude them from violating the open burning permit requirements. The district court entered an order which permanently enjoined the Lincoln County commissioners from violating the permit requirements. Further, the district court awarded DHES its attorney fees and costs incurred in the action.

¶26 On appeal, Lincoln County raised several issues, including the legitimacy of the attorney fee award. This Court affirmed the award of attorney fees, stating that "[t]he award of attorney fees is consistent with prevention of future repetitions of similar actions . . . ." *State ex rel. Dept. of Health*, 178 Mont. at 418, 584 P.2d at 1298. However, we also stated:

> The award of attorney fees could have been eliminated entirely had Lincoln County in the first instance filed an action for declaratory judgment to test the validity of the Board's rule on open burning and the permit requirements. There is no provision for an award of attorney fees in a declaratory judgment.

12

*State ex rel. Dept. of Health*, 178 Mont. at 418, 584 P.2d at 1297-98. The opinion does not cite any authority for this proposition, other than a general citation to the UDJA, or undertake any analysis in arriving at this conclusion. The opinion provides no indication that either party raised §§ 27-8-311 or -313, MCA, or their predecessors. In fact, the opinion is devoid of any specific reference to either provision.

¶27 In *McKamey*, Joseph McKamey, a civilian firefighter employed by the State of Montana, Department of Military Affairs, filed suit against the state. McKamey sought declaratory, injunctive, and equitable relief from a military service requirement endorsed by the Personnel Division of the State of Montana which exempted certain employment positions from the wage requirements of the State Compensation Plan. The district court granted summary judgment in favor of McKamey and ordered each party to pay their respective attorney fees and costs. McKamey appealed the attorney fee issue to this Court.

¶28 McKamey cited §§ 25-10-711 (award of costs against a governmental entity when the suit or defense is frivolous or pursued in bad faith) and 27-8-311, MCA, as authority for an award of attorney fees and costs. We indicated that § 27-8-311, MCA, authorizes a court to award *costs,* as may seem equitable and just, in a declaratory judgment action. *McKamey*, 268 Mont. at 148, 885 P.2d at 522. We then cited *State ex rel. Dept. of Health* for the proposition that "[t]here is no provision for an award of attorney fees in an action for declaratory judgment" and affirmed the denial of attorney fees and costs. *McKamey*, 268 Mont. at 148, 885 P.2d at 522. *McKamey* does not reference or analyze § 27-8-313, MCA. Instead, in the absence of bad faith, *McKamey* affirmed the denial of attorney fees based solely on the perfunctory conclusion announced in *State ex rel. Dept. of Health*.

13

¶29    In *Dorwart*, we reiterated the prohibition against recovery of attorney fees in declaratory judgment actions, citing the rule announced in *State ex rel. Dept. of Health. See Dorwart*, ¶ 133. However, again, we did so without referencing or analyzing §§ 27-8-311 or -313, MCA. Our research indicates that two additional cases articulate a prohibition against recovery of attorney fees in declaratory judgment actions. *See State ex rel. Swart v. Casne* (1977), 172 Mont. 302, 310, 564 P.2d 983, 987; *State ex rel. Leach v. Visser* (1988), 234 Mont. 438, 443, 767 P.2d 858, 861. Likewise, these cases fail to reference or analyze §§ 27-8-311 or -313, MCA. As the case at bar squarely presents the issue of whether §§ 27-8-311 and -313, MCA, permit an award of attorney fees in declaratory judgment actions, and as the above referenced cases do not entertain such an analysis, we deem it necessary to revisit the alleged proscription.

¶30    Section 27-8-311, MCA, the costs provision of the UDJA, provides that "[i]n any proceeding under this chapter the court may make such award of costs as may seem equitable and just." It is well-settled in Montana that attorney fees "are not allowed as costs under statutory provisions for costs in ordinary litigation, that they are not, in any proper sense, a part of the costs in a case." *Kintner v. Harr* (1965), 146 Mont. 461, 480, 408 P.2d 487, 498. *See also Martin v. Randono* (1981), 191 Mont. 266, 270, 623 P.2d 959, 962 ("The statutory term 'costs' does not include attorney fees.").

¶31    In *Schillinger v. Brewer* (1985), 215 Mont. 333, 697 P.2d 919, we addressed whether attorney fees were "costs" in a mechanic's lien foreclosure case. We noted that § 25-10-501, MCA, did not say that fees were costs and that the "costs generally allowable" provision, § 25-10-201, MCA, does not acknowledge attorney fees as a recoverable cost. *Schillinger*,

14

215 Mont. at 337, 697 P.2d at 922. Likewise, § 27-8-311, MCA, does not expressly equate attorney fees with costs. Further, nothing in the UDJA or plain language of § 27-8-311, MCA, suggests that we should construe "costs" in declaratory judgment actions differently than our historical interpretation of the term. Therefore, we hold that § 27-8-311, MCA, does not authorize an award of attorney fees.

¶32     Section 27-8-313, MCA, provides:

>     **Supplemental relief.** Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by a declaratory judgment or decree to show cause why further relief should not be granted forthwith.

While we have not examined § 27-8-313, MCA, within the context of attorney fees, we have stated the following about the provision:

>     The statute enables the District Court to retain jurisdiction to grant further relief as it deems necessary and proper to enforce the declaratory judgment. The supplemental relief should be designed to provide complete relief to the parties, which may include a monetary judgment or coercive relief or both. In fashioning the remedy, the court is not bound by the relief requested in the complaint but may order any relief needed to effectuate the judgment.

*Goodover v. Lindey's, Inc.* (1990), 246 Mont. 80, 82, 802 P.2d 1258, 1260 (citations omitted).

¶33     Following the 1990 *Goodover* decision, the district court ordered Lindey's to pay Goodover $10,761.86 in attorney fees. Lindey's appealed and we reversed the award in *Goodover v. Lindey's, Inc.* (1992), 255 Mont. 430, 843 P.2d 765. The University contends that the district court awarded attorney fees to Goodover pursuant to § 27-8-313, MCA.

15

Thus, it argues that our reversal of that award proves dispositive to the case at bar. However, in the 1992 opinion we noted:

> The District Court did not rely on any statute or rule of civil procedure in its award of attorney's fees. Instead, the District Court first relied on a United States Supreme Court decision that discussed the powers of the federal district court to assess attorney's fees as an appropriate sanction under the "bad faith" exception to the general rule. The District Court then concluded that its general equity power to make a party whole in some cases included the right to award attorney's fees, and that Lindey's bad faith and malicious behavior towards Goodover merited such an award.

*Goodover*, 255 Mont. at 445-46, 843 P.2d at 774. Ultimately, we reversed the award because the action presented "neither a statutory nor a contractual basis for the award of attorney's fees, nor [did] it fall within one of the narrow exceptions to the [American Rule]. . . ." *Goodover*, 255 Mont. at 449, 843 P.2d at 776. As neither the parties, nor the district court advanced a statutory argument in favor of the award, our reversal of the award proves inapplicable to the case at bar.

¶34    Likewise, contrary to the University's contention, *Yovish* proves inapplicable to the statutory analysis at hand. In *Yovish*, we reversed an award of attorney fees in a declaratory judgment action because we "hesitate[d] to expand the exception to the [American Rule] without legislative authority." *Yovish*, 243 Mont. at 291, 794 P.2d at 686. However, we expressly indicated that "[t]his action presents neither a statutory nor a contractual basis for an award of attorney fees." *Yovish*, 243 Mont. at 290, 794 P.2d at 686. As this Court was presented with a different issue in *Yovish*, it should not preclude our consideration of the statutory issues proffered *sub judice*.

16

¶35 Whether § 27-8-313, MCA, authorizes an award of attorney fees is an issue of first impression in Montana. Therefore, we find it useful to review other jurisdictions' treatment of the uniform "supplemental relief" provision to aid in our interpretation and application of § 27-8-313, MCA.

¶36 While the "uniform" supplemental relief provision of the UDJA has experienced widespread adoption, research indicates that construction and application of the provision remains anything but harmonious. However, several jurisdictions have interpreted their respective supplemental relief provisions to authorize attorney fee awards in declaratory judgment actions. *See, e.g., Security Ins. Co. of New Haven v. White* (10th Cir. 1956), 236 F.2d 215, 220 (providing that the grant of power contained in the supplemental relief provision authorizes a court to award attorney fees where it is necessary or proper to effectuate relief); *Advertiser Co. v. Auburn University* (Ala. Civ. App. 1991), 579 So.2d 645, 647 (awarding of attorney fees is discretionary in declaratory judgment actions under the "further relief" provision); *Elliott v. Donahue* (Wis. 1992), 485 N.W.2d 403, 409 ("[T]he supplemental relief under [the UDJA] may include a recovery of attorney fees incurred by the insured in successfully establishing coverage under an insurance policy."); *State Farm Fire and Cas. Co. v. Sigman* (N.D. 1993), 508 N.W.2d 323, 326 (stating that the supplemental relief provision provides an independent ground for the award of attorney fees).

¶37 Prior to September 1999, the Ohio Declaratory Judgments Act contained a supplemental relief provision virtually identical to § 27-8-313, MCA, as discussed in greater detail below. In *Motorists Mut. Ins. Co. v. Brandenburg* (Ohio 1995), 648 N.E.2d 488, 490, pursuant to its then existing supplemental relief provision, the Ohio Supreme Court held that

"a trial court has the authority under [the UDJA] to assess attorney fees based on a declaratory judgment issued by the court." In September 1999, the Ohio Legislature codified R.C. 2721.16 to supercede *Brandenburg* and prohibit the award of attorney fees in declaratory judgment actions, with certain exceptions. However, there exists no similar statutory prohibition in Montana. Although the holding has been superceded by statute, we find the Ohio Supreme Court's interpretation of the supplemental relief provision in *Brandenburg* compelling.

¶38 In *Brandenburg*, following a "multiple-vehicle chain-reaction accident," Billie Brandenburg submitted a claim to his insurance company for uninsured motorist coverage. The insurance company denied the claim and subsequently filed a declaratory judgment action seeking a declaration of rights under the insurance policy. The trial court concluded that Brandenburg was entitled to coverage under the uninsured motorists provision of the policy. Further, the trial court awarded Brandenburg his attorney fees incurred in the declaratory judgment action. The Ohio Court of Appeals reversed the award of attorney fees on the grounds that the insurance company did not act in bad faith or breach its duty to defend. The Ohio Court of Appeals did not address whether the UDJA authorized the award. Brandenburg appealed the Ohio Court of Appeals' decision to the Ohio Supreme Court.

¶39 The Ohio Supreme Court analyzed the award of attorney fees within the context of the supplemental relief provision of Ohio's Declaratory Judgments Act. That provision, R.C. 2721.09, which was virtually identical to § 27-8-313, MCA, provided:

> [W]henever necessary or proper, a court of record may grant further relief based on a declaratory judgment or decree previously granted under this chapter. The application for the further relief shall be by a complaint filed in

18

a court of record with jurisdiction to grant the further relief. If the application is sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why the further relief should not be granted forthwith.

Brandenburg argued that "regardless of the specific duties imposed upon an insurer and irrespective of the insurer's conduct, a trial court, as incidental to a declaration of an insurer's obligations to its insured, has the discretion under R.C. 2721.09 to permit a recovery of attorney fees by the insured." *Brandenburg*, 648 N.E.2d at 490. The Ohio Supreme Court agreed.

¶40     In holding that the supplemental relief provision authorized an award of attorney fees, the Ohio Supreme Court concluded:

> R.C. 2721.09 plainly permits a trial court, following a binding judicial interpretation of an insurance policy based upon a declaratory judgment action, to provide relief which the court deems "necessary or proper."
>
> By its clear terms, the intent of R.C. 2721.09, affording further relief in declaratory judgment actions, is to provide a trial court with the authority to enforce its declaration of right. . . . Nowhere in R.C. Chapter 2721 is there any provision which narrows the broad authority conferred by R.C. 2721.09. Moreover, R.C. 2721.09 does not place any legal significance on the insurer's conduct nor is the operation of the section conditioned on which party actually prevails in the underlying action. Rather, the only limitation placed on the trial court is that the relief must be "necessary or proper." Hence, this court should not create a blanket limitation precluding an award of attorney fees based upon conduct of a party and/or who wins or who loses. . . .
>
> Accordingly, we hold that a trial court has the authority under R.C. 2721.09 to assess attorney fees based on a declaratory judgment issued by the court. The trial court's determination to grant or deny a request for fees will not be disturbed, absent an abuse of discretion.

*Brandenburg*, 648 N.E.2d at 490. In examining whether the trial court abused its discretion when it awarded attorney fees, the Ohio Supreme Court observed:

19

> [I]t is evident that the trial court recognized the anomalous result that may arise in these types of cases. Here, appellants were covered by an insurance policy they had purchased. They sought to have their own insurance company compensate them (pursuant to uninsured motorists coverage) for losses they incurred. Subsequent to the court of appeals' previous decision mandating coverage, the parties (appellee and appellants) apparently settled appellants' claims for $2,000. To effect this recovery, appellants were forced to retain counsel and expend at least $10,339.15. Under these circumstances, appellants would have been better off if they had been without insurance.

*Brandenburg*, 648 N.E.2d at 490-91. Accordingly, the Ohio Supreme Court reversed the judgment of the Ohio Court of Appeals and reinstated the award of attorney fees.

¶41 As in *Brandenburg*, Montana's Declaratory Judgments Act contains no provision which narrows the broad, discretionary authority conferred by § 27-8-313, MCA. In fact, the Montana Legislature has expressly issued a mandate to the contrary. Section 27-8-102, MCA, provides:

> **Purpose–liberal construction.** This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered.

We believe that the absence of prohibitive language in the UDJA, coupled with the liberal construction directive, compel a *Brandenburg*-like interpretation of § 27-8-313, MCA. Such an interpretation further comports with our statement in *Goodover* that "[t]he supplemental relief should be designed to provide complete relief to the parties, which may include a monetary judgment or coercive relief or both." *Goodover*, 246 Mont. at 82, 802 P.2d at 1260.

¶42 Admittedly, *Brandenburg* and most of the cases from other jurisdictions cited above analyze the supplemental relief provisions within the context of a traditional insurer/insured

20

relationship. However, we need not limit application of the above rationale to the typical insurance arrangement. For, § 27-8-313, MCA, draws no distinction between declaratory judgment actions adjudicating the rights of an insured against an insurer and those actions adjudicating rights outside the confines of an insurance policy. Based on the rationale articulated in *Brandenburg*, we hold that § 27-8-313, MCA, authorizes a court to award attorney fees when the court, in its discretion, deems such an award "necessary or proper."

¶43    We realize the "necessary or proper" language presents a somewhat nebulous standard for trial courts attempting to exercise their discretionary powers. We offer the following analysis of the Ohio Court of Appeals, not to define the exclusive circumstances justifying an award, but to articulate some tangible parameters for trial courts forging through declaratory judgment actions hereafter.

¶44    Following *Brandenburg*, the Ohio Court of Appeals sought to define the "necessary or proper" limits in *McConnell v. Hunt Sports Ent.* (Ohio Ct. App. 1999), 725 N.E.2d 1193. In *McConnell*, the court acknowledged the "anomalous result" circumstance, present in *Brandenburg*, as one situation satisfying the "necessary or proper" requirement:

> Had no attorney fees been awarded [in *Brandenburg*], the insureds would have been worse off than if a declaration of their rights had never been made. In this situation, the trial court's authority to enforce its declaration would have been meaningless. Further, litigation was required in order for the insureds to obtain coverage.

*McConnell*, 725 N.E.2d at 1224. The court also recognized that a party might recover attorney fees incurred in a declaratory judgment action, when no other alternative was available, to "remove the cloud from title to . . . property." *McConnell*, 725 N.E.2d at 1225

21

(citing *Culberson Transp. Serv., Inc. v. John Alden Life Ins. Co.* (Ohio Ct. App. 1997), 1997 WL 358857).

¶45    The court justified the awards in the above circumstances based on the following:

> In *Brandenburg* and *Culberson*, the bases for finding attorney fees were necessary or proper lay in the fact that without a declaration, the insureds in *Brandenburg* would not have coverage under their insurance policy and the plaintiffs in *Culberson* would have a cloud on their title. In those cases, the insurance company and the mortgagee essentially "possessed" what the insureds and plaintiffs sought in the litigation. Therefore, the insureds and plaintiffs in *Brandenburg* and *Culberson* needed a declaration that they were entitled to such "property" (in *Brandenburg*, the insureds sought, as a practical matter, $2,000 and in *Culberson*, the plaintiffs sought to lift the cloud from their title). In short, the declarations sought in those cases were necessary in order to change the status quo. Attorney fees expended in acquiring such declarations were necessary or proper to afford meaningful relief.

*McConnell*, 725 N.E.2d at 1225. In *McConnell*, the Ohio Court of Appeals reversed an award of attorney fees, awarded in favor of the party which filed the declaratory judgment action, because the filing party commenced the declaratory judgment action for purely tactical reasons. The court concluded:

> While such decisions may have proved resourceful, they were not necessary in order to change or preserve the status quo. . . . Simply because appellees made a tactical move and filed a declaratory judgment action does not automatically mean they are entitled to attorney fees under R.C. 2721.09. Tactical decisions do not equal necessary or proper as contemplated by the statute.

*McConnell*, 725 N.E.2d at 1225. Again, we do not intend for the above examples to constitute exhaustive factual scenarios. We simply offer *McConnell's* analysis for guidance in future applications of § 27-8-313, MCA.

¶46    In summary, § 27-8-311, MCA, does not authorize an award of attorney fees in declaratory judgment actions. To the extent *State ex rel. Dept. of Health*, *McKamey*,

22

*Dorwart*, *State ex rel. Swart*, and *State ex rel. Leach* are consistent with this conclusion, they are affirmed. However, § 27-8-313, MCA, does provide discretionary authority for an award of attorney fees. Therefore, to the extent *State ex rel. Dept. of Health*, *McKamey*, *Dorwart*, *State ex rel. Swart*, and *State ex rel. Leach* suggest otherwise, they are overruled. For the foregoing reasons, we hold that the District Court erred when it concluded that it lacked authority to award attorney fees. We remand this matter for the District Court to determine, pursuant to § 27-8-313, MCA, whether an award of attorney fees is "necessary or proper," and, if so, the amount of such award.

¶47    Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JIM REGNIER

23

We Concur:

/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

/S/JOE L. HEGEL
Judge Joe Hegel sitting for Chief Justice Gray

¶48 Justice James C. Nelson concurs and dissents.

¶49 I concur in the result reached by the majority. I cannot, at this time, however, agree in the majority's analysis with respect to § 27-8-313, MCA. I do not believe that this is an appropriate case to apply § 27-8-313, MCA, because, as the majority concedes, the Jones Estate failed to argue this section in the District Court.

¶50 Rather, based upon the record before us, I conclude that the University was acting as and should be deemed to be a de facto insurer. I also conclude that the District Court erred, as a matter of law, in its determination that Indiana University was not an insurer.

¶51 In support of my conclusion the following facts are relevant. In 1987, the University began a self-insurance program by which it retained the risk of its liability up to $1 million. The University also purchased a $15 million excess liability policy from TIG Insurance Company.

¶52 The University's Risk Management Office administers the self-insurance fund, operating like an insurance company within the University system. The University departments make payments to the Risk Management Office. The money is used to pay claims and run the Risk Management Office.

¶53 The Risk Management Office employs claims adjusters who handle internal claims within the University and external claims against the University. The Risk Management Office runs a loss prevention program and purchases commercial insurance as needed. It also purchases and administers coverage for independent corporations and entities associated with the University.

¶54    Larry Stephens, the Director of the Risk Management Office, created a 230 page document styled "Indiana University, Operation of the Indiana University Self Insurance Fund." This document contains policies which risk management adjusters use as guidelines to adjust claims. Additionally, Mr. Stephens drafted a five-page document styled "Indiana University Office of Risk Management, I.U. Self-Insurance Fund (IUSIF), Policy on Auto Coverage." This document was reviewed and approved by Indiana University's legal department and by a vice president. The University claimed that its adjusters used these documents as references in adjusting claims and in advising its insureds concerning coverage. The University claimed that these were only guidelines and did not bind the University in any manner.

¶55    According to COUCH ON INSURANCE 3D:

> Whether a self-insured party is considered to be providing "insurance" depends in large part on (1) the purpose of the analysis, (2) whether the arrangement described as self-insurance is, in reality, an effort by the party to assume insurable risks or merely amounts to a "deductible," and (3) whether the entity has made a conscious, calculated decision to estimate its risk and set aside sufficient funds to cover expected losses, or simply and somewhat offhandedly decided to save the cost of purchasing insurance by merely hoping that no losses would occur.

1 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D, § 10:2 (1997).

¶56    I conclude that each of these three tests is satisfied based upon the record in this case. Indiana University was, indeed, acting as an insurer. The University clearly was assuming insurable risks in the same way that an insurance company would, and it was conducting its insurance operations in the same way that a commercial insurance company would. It is also clear that the University made a conscious, calculated decision to estimate its risks and to set

aside sufficient funds to cover those expected losses rather than simply and somewhat offhandedly attempt to save the cost of purchasing insurance by hoping that no losses would occur.

¶57 Since the University was a de facto insurer and since the question at issue in this appeal involves whether a first-party insurer's improper refusal to indemnify will give rise to a claim for attorney fees and non-statutory costs, I conclude that the appropriate analytical construct in this case should be that adopted by this Court in *Mountain West Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT 98, ¶¶ 8-36, 43-53, ___ Mont. ___, ¶¶ 8-36, 43-53, ___ P.3d ___, ¶¶ 8-36, 43-53 (Trieweiler, T, concurring and dissenting).

¶58 While I agree with the majority's analysis of our prior case law as set forth in ¶¶ 25-29, I nonetheless believe that the attorney fees and costs question in the case at bar is better analyzed and resolved under the insurance exception discussed in *Mountain West* and the concurrence, rather than on the basis of § 27-8-313, MCA--a statute and theory that was not argued in the District Court.

¶59 Accordingly, I concur in the result of our Opinion but not in our application of § 27-8-313, MCA.

/S/ JAMES C. NELSON