FILED

June 8 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0246

DA 15-0246

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 143

MAGGIE PETAJA,

      Plaintiff, Appellee and Cross-Appellant,

v.

THE MONTANA PUBLIC EMPLOYEES' ASSOCIATION (MPEA),

      Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 13-861
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Karl J. Englund, Karl J. Englund, P.C.; Missoula, Montana

            Carter Picotte, Attorney at Law; Helena, Montana

      For Appellee:

            Valerie D. Wilson, Wilson Law Offices PLLC; Helena, Montana

Submitted on Briefs: April 6, 2016

Decided: June 8, 2016

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Montana Public Employees Association (MPEA) appeals from a jury verdict entered by the First Judicial District Court, Lewis and Clark County, awarding Maggie Petaja (Petaja) $100,000 in damages. Petaja cross-appeals the District Court's denial of her motion for attorney fees. We affirm.

¶2    We restate and address the following issues:

1. *Did substantial evidence support the jury verdict finding MPEA breached its duty of fair representation?*

2. *Was the jury verdict contrary to the instructions and law?*

3. *Was Petaja's claim barred by res judicata?*

4. *Did the District Court have legal authority to award attorney fees?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    Most of the facts of this case are not in dispute as a matter of law. MPEA's trial counsel failed to timely answer multiple discovery requests propounded by Petaja and failed to respond to the District Court's order granting Petaja's motion to compel MPEA to answer the discovery requests. As a result, the District Court ordered Petaja's requests for admission to be deemed admitted.

¶4    This case began when Petaja was terminated from her position with Lewis and Clark County as the Clinic Coordinator of the Women, Infants and Children Supplemental Nutrition Program. The County claimed Petaja's position was terminated as the result of a reorganization. Petaja, 59, claimed she was terminated because of her age.

¶5     Petaja was a member of a collective bargaining unit represented by MPEA. The collective bargaining agreement provided a procedure to address grievances between employees and the County. The grievance procedure consisted of four advancing steps: (1) an informal discussion with the employee's supervisor; (2) a formal grievance written to the department head; (3) a formal grievance written to the Human Resources Director; and (4) final and binding arbitration. Petaja requested MPEA to file a Step 1 grievance challenging her termination. In response, the County offered to employ Petaja as a temporary administrative receptionist at a significant pay decrease. Petaja accepted the position but refused to waive any rights or claims she had under the CBA against the County. Petaja then requested MPEA to file a Step 2 grievance. MPEA scheduled a meeting with its representative, Raymond Berg, and Petaja's husband, to discuss Petaja's Step 2 grievance. Berg then refused to meet with Petaja's husband to discuss Petaja's Step 2 grievance.

¶6     Petaja's husband then hand delivered a letter to Berg, with a copy to MPEA's counsel, which requested that MPEA file Petaja's Step 2 grievance, or alternatively, provide Petaja with written confirmation that MPEA had decided not to pursue the grievance and that Petaja had exhausted her remedies under the CBA. MPEA refused to file Petaja's Step 2 grievance, and failed to provide her with written notice of its decision not to pursue the grievance and that she had exhausted her remedies under the CBA.

¶7     Instead, MPEA signed a settlement agreement on behalf of Petaja that purported to resolve all disputes concerning wages owed to Petaja by the County under the CBA,

without reservation of any other claim. MPEA did not advise Petaja it was entering into a settlement agreement with the County, nor did MPEA present the settlement agreement to Petaja for her signature or review.

¶8 Petaja filed a discrimination claim against the County with the Human Rights Bureau (HRB). HRB issued a final agency decision dismissing the claim. Petaja also filed an unfair labor practice complaint against MPEA with the Montana Board of Personnel Appeals (BOPA). BOPA issued a final agency decision dismissing the complaint. After HRB and BOPA dismissed Petaja's complaints, Petaja filed suit in district court against the County, alleging discrimination, and against MPEA, alleging breach of the duty of fair representation. The County pled as an affirmative defense that Petaja's discrimination claim was time barred. MPEA did not contend that Petaja's fair representation claim was barred by BOPA's final decision under the doctrine of res judicata.

¶9 At trial, the District Court instructed the jury on the claim of breach of the duty of fair representation as follows:

> [T]he Plaintiff has the burden of proving, by a preponderance of the evidence that:
>
> 1) She was a member of MPEA's collective bargaining unit;
> 2) The employer violated the terms of the collective bargaining agreement;
> 3) Defendant MPEA breached its duty to act honestly and in good faith and to avoid arbitrary conduct.
>
> A union breaches its duty of fair representation:
>
> 1) When it ignores a meritorious grievance or processes agreements in a perfunctory manner

4

2) When it fails to act honestly and [in] good faith with its union members;
3) When its conduct is arbitrary, discriminatory or in bad faith;
4) When it egregiously disregards the rights of the union member.

¶10 Whether Petaja's discrimination claim against the County was time barred was submitted as a factual question to the jury. The jury returned a verdict in favor of the County on the discrimination claim, but the verdict form did not require the jury to indicate whether it found in favor of the County on the merits or because it found Petaja's claim was time-barred. The jury returned a verdict against MPEA on the breach of the duty of fair representation claim, finding it liable for $100,000 in damages.

¶11 After trial, Petaja asked the District Court to order MPEA to pay Petaja's attorney fees, totaling $100,975. MPEA did not respond to this request. The District Court denied Petaja's request on the ground it had no legal authority to award attorney fees, stating, "[d]espite the incomprehensible admission by MPEA to the award of $100,975 in attorney fees against it, the Court will not grant the award." MPEA appeals from the jury verdict. Petaja cross-appeals the District Court's denial of attorney fees.

**STANDARD OF REVIEW**

¶12 The Court reviews a jury verdict to determine whether it is supported by substantial credible evidence. *Magart v. Shank*, 2000 MT 279, ¶ 4, 302 Mont. 151, 13 P.3d 390. The standard of review for whether the verdict is consistent with the law and instructions is also substantial evidence. *Drilcon, Inc. v. Roil Energy Corp.*, 230 Mont. 166, 178, 749 P.2d 1058, 1065 (1988).

5

¶13    A district court's application of *res judicata* is an issue of law that is reviewed for correctness. *Touris v. Flathead County*, 2011 MT 165, ¶ 10, 361 Mont. 172, 258 P.3d 1.

¶14    A district court's conclusion regarding the existence of legal authority to award attorney fees is reviewed for correctness. *City of Helena v. Svee*, 2014 MT 311, ¶ 7, 377 Mont. 158, 339 P.3d 32.

## DISCUSSION

¶15    *1. Did substantial evidence support the jury verdict finding MPEA breached its duty of fair representation?*

¶16    Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion, even if weak and conflicting. *Siebken v. Voderberg*, 2015 MT 296, ¶ 12, 381 Mont. 256, 359 P.3d 1073. It consists of more than a mere scintilla of evidence but may be less than a preponderance. *Marriage of Schmitz*, 255 Mont. 159, 165, 841 P.2d 496, 500 (1992). It is the role of the jury to determine the weight and credibility of the evidence, and this Court will defer to the jury's role. *Upky v. Marshall Mountain, LLC*, 2008 MT 90, ¶ 23, 342 Mont. 273, 180 P.3d 651 (citation omitted). We view the evidence in the light most favorable to the prevailing party. *Upky*, ¶ 23. Where conflicting evidence exists, we will not overturn a jury's decision to believe one party over another. *Upky*, ¶ 23 (citing *Samson v. State*, 2003 MT 133, ¶ 11, 316 Mont. 90, 69 P.3d 1154).

¶17    Under the substantial evidence standard, MPEA's admissions of fact as deemed by the court present an insurmountable obstacle on appeal. The jury was instructed to accept as true that MPEA had refused to meet with Petaja and her husband to discuss the Step 2

6

grievance, failed to file Petaja's Step 2 grievance, failed to notify Petaja that it would not file Petaja's Step 2 grievance, failed to verify that Petaja had exhausted her administrative remedies, and, without Petaja's knowledge, signed a settlement agreement on Petaja's behalf with the County that purported to resolve all claims between Petaja and the County. These admissions of fact presented the jury with significantly more than a "mere scintilla" of evidence that MPEA's conduct was "arbitrary, discriminatory or in bad faith." Any evidence MPEA presented at trial that showed MPEA's conduct was reasonable was therefore conflicting at best, which precludes the jury's verdict from being overturned. *Upky*, ¶ 23.

¶18    *2. Was the jury verdict contrary to the instructions and law?*

¶19    MPEA argues the jury's verdict was inconsistent and contrary to the law because "the employer [was] found not at fault," which means "the union is liable for nothing – it did not increase the damages caused by the employer's wrongful conduct because the employer committed no wrong." This is incorrect for two reasons.

¶20    First, MPEA misapprehends the jury's verdict regarding the County's fault. Whether Petaja's discrimination claim against the County was time barred was submitted as a factual question to the jury. It was therefore possible for the jury to believe the County discriminated against Petaja, only to also find that the meritorious claim was time barred. Although we do not speculate on how the jury reached its decision, *Jim's Excavating Serv. v. HKM Assocs.*, 265 Mont. 494, 513, 878 P.2d 248, 259 (1994), it is entirely possible the jury found the County discriminated against Petaja, but that the

7

claim was time barred, given the jury was instructed that in order to recover against MPEA, Petaja had to prove (1) she was a member of MPEA's collective bargaining unit, (2) *the County violated the terms of the CBA*, and (3) MPEA breached its duty to act in good faith. Under the verdict form used, MPEA cannot prove otherwise. The jury's verdict is therefore not demonstrably inconsistent.

¶21 Second, although MPEA cites ample authority for the proposition that a union is liable only for increases in the employee's damages caused by the union's refusal to process a meritorious grievance, the jury received no such damages instruction. Instead, the jury was instructed to compensate Petaja for "the damages, harm, or detriment caused by [MPEA's] violation." We have long adhered to the rule that "an instruction given without objection becomes the law of the case" for this purpose. *Seltzer v. Morton*, 2007 MT 62, ¶ 144, 336 Mont. 225, 154 P.3d 561. The jury's verdict was therefore not contrary to the law.

¶22 *3. Was Petaja's claim barred by res judicata?*

¶23 In responding to a complaint, the defense of res judicata must be pled as an affirmative defense. Mont. R. Civ. P. 8(c)(1). The failure to affirmatively plead a defense set forth in Rule 8(c) results in a waiver of that defense. *Nitzel v. Wickman*, 283 Mont. 304, 312, 940 P.2d 451, 456 (1997). Because trial counsel for MPEA did not properly raise this issue before the District Court, we decline to address it on appeal. *In re Transfer Terr. From Poplar Elem. Sch. Dist. No. 9 to Froid Elem. Sch. Dist. No. 65*, 2015 MT 278, ¶ 18, 381 Mont. 145, 364 P.3d 1222.

¶24  *4. Did the District Court have legal authority to award attorney fees?*

¶25  Petaja argues on cross-appeal that the District Court had legal authority to award her attorney fees incurred in litigating this action. Montana follows the American Rule that, absent a specific statutory or contractual provision, a prevailing party generally is not entitled to recovery of its attorneys' fees in prosecuting or defending the action. *Trustees of Ind. Univ. v. Buxbaum*, 2003 MT 97, ¶ 19, 315 Mont. 210, 69 P.3d 663. We have recognized equitable exceptions to the American Rule, *Buxbaum*, ¶ 19, but construe these exceptions narrowly "lest they swallow the rule." *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 23, 351 Mont. 464, 215 P.3d 649.

¶26  There are no contractual or statutory provisions applicable here, nor do any of the equitable exceptions apply. Despite MPEA's "incomprehensible admission" to an award of $100,975 in attorney fees, the District Court correctly found it had no legal authority to award attorney fees in this action.

¶27  Affirmed.

/S/ JIM RICE

We concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA

9

Chief Justice McGrath, specially concurring.

¶28 I concur in the result reached by the majority but not all that is said in the majority Opinion.

¶29 In ¶ 23, the majority disposes of MPEA's contention that Petaja's claims were barred by claim preclusion or res judicata by concluding that her attorney Carter Picotte did not properly raise the issue in District Court. The majority also implies the claim preclusion was never raised below and was therefore waived.

¶30 The record shows that MPEA specifically raised claim preclusion in its answer to the Second Amended Complaint and again in the Pretrial Order. Therefore, there was no waiver of the defense based upon a failure to plead as required by M. R. Civ. P. 8(c). However, it is clear that after raising the defense, trial counsel never brought it to the District Court for a decision. The defense was therefore waived not by a failure to plead, but by a failure to subsequently pursue it in the litigation.

¶31 In any event, the res judicata defense rested upon the proposition that Petaja's claims were adjudicated against her in the Board of Personnel Appeals. The only action taken by the BPOA on Petaja's grievance was to assign an investigator who wrote a report concluding that Petaja's claims lacked merit. There was no adjudication, quasi-judicial or otherwise, sufficient to support res judicata. *Nasi v. Dep't of Highways*, 231 Mont. 395, 397-98, 753 P.2d 327, 329 (1988).

/S/ MIKE McGRATH

10