## Pannebaker *v.* Tuscarora Valley Railroad Company, Appellant.

*Contract—Railroad—Agreement as to siding—Authority of president—Ratification of contract.*

Where an owner of land abutting on a railroad enters into an agreement with the president of the railroad company to erect a sawmill, for the consideration, among other things, of the company constructing a siding for the use of the mill, and the contract is completely carried out, and both parties enjoy the benefit of it for a period of nine years, it will be presumed that the railroad company ratified the act of the president in making the contract, although he may have had no legal power at the time to make it on behalf of the company.

A corporation may not avail itself even of ultra vires as a defense, where a contract has been entered into and executed in good faith by the other party, and the corporation has received the benefit of the performance.

Argued May 27, 1907.    Appeal, No. 162, Jan. T., 1907, by defendant, from decree of C. P. Juniata Co., Sept. T., 1906, No. 1, on bill in equity in case of S. E. Pannebaker v. Tuscarora Valley Railroad Company.    Before MITCHELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ.    Affirmed.

Bill in equity for an injunction, and for damages.

SHULL, P. J., found the facts to be as follows :

1. The Tuscarora Valley Railroad Company is a corporation duly chartered to construct a line of railroad from Port Royal to Blair's Mills, that it built, has been, and now is operating said road, and has its principal office in the county of Juniata, and that T. S. Moorehead, from the organization of said company until the time of his death in 1906, was the president.

2. About the month of July, 1897, T. S. Morehead, president, proposed to plaintiff that in consideration of the plaintiff placing a sawmill and planing mill and other machinery for the manufacture of lumber, and ship the same over defendant company's railroad and thus augment its traffic, said company would sell and convey a part of a lot of ground adjoining other lands of plaintiff upon which said plant was to be erected, provide other lands of the said company contiguous therewith for the storage and piling of lumber, and would construct a siding for his use and convenience in shipping lumber and would maintain the same as long as plaintiff continued to conduct such business.

3. It was further agreed and stipulated between the said parties that in case the lands, occupied by the siding then laid or to be laid, were necessary for the company's railroad purposes, it would construct and maintain a siding for plaintiff on other lands then designated by the parties, which would afford the same facilities for shipment.

4. The plaintiff acceded to the proposition, and in furtherance of the project, defendant company on July 27, 1897, made and executed a deed for a plot of ground adjoining plaintiff's land, and bounded by other lands of defendant company, the consideration of which is the sum of $50.00.

5. In pursuance of said contract and agreement defendant company, about 1897, constructed from other side tracks leading to its main line a siding leading to the plaintiff's lumber

yard, which said siding was dedicated by acts of user to plaintiff's purposes exclusively. The plaintiff about the same time erected a stave mill, sawmill and planing mill upon his premises, engaged in and conducted a large lumber business, transporting said product over the defendant company's railroad, paying to said company large revenues in freight for his said shipments, in pursuance of the parol contract made and entered into between plaintiff and T. S. Morehead, president, representing defendant company.

6. T. S. Morehead, the president, was owner of almost the entire capital stock of the corporation, there being outstanding only sufficient to establish a board of directors. He controlled, directed and supervised the construction, maintenance and operations of the road, was not only the president, purchasing agent, general manager, but was the management.

7. That on May 7, 1906, defendant company removed the said siding, against the protest of the plaintiff, thereby hindering in the operations of his plant.

The court entered a decree directing the defendant to restore the siding, and awarding plaintiff $1,025 damages for his loss sustained by the removal of the siding.

*Errors assigned* were various findings, rulings on evidence and the decree of the court.

*F. M. M. Pennell*, of *Atkinson & Pennell*, for appellants.— The president had no power virtue officii to make the contract: Penna. R. R. Co.'s App., 80 Pa. 265 ; Sitler v. Fire Ins. Co., 18 Pa. Superior Ct. 139 ; Moore v. Patterson, 28 Pa. 505 ; Twelfth St. Market Co. v. Jackson, 102 Pa. 269 ; Susquehanna Coal Co. v. Wright, 9 W. & S. 9 ; Bedford R. R. Co. v. Bowser, 48 Pa. 29 ; Bank v. McKee, 2 Pa. 318.

There was no ratification of the act of the president in making the alleged parol contract: Twelfth St. Market Co. v. Jackson, 102 Pa. 269 ; Moore's Exrs. v. Patterson, 28 Pa. 505 ; Pittsburg, etc., R. R. Co. v. Gazzam, 32 Pa. 340 ; Zoebisch v. Rauch, 133 Pa. 532.

*J. Mac Barnett*, of *Barnett & Son*, with him *J. H. Neely*, for appellee.—The contract being such as the company had power to make, and having been made by the president for and in

the name of the company, authority in the president will be presumed and this presumption in the absence of rebutting proof is absolute: 2 Cook on Corporations, 1772; Bank of Penna. v. Reed, 1 W. & S. 101; Oil Creek, etc., R. R. Co. v. Transportation Co., 83 Pa. 160; Wright v. Pipe Line Co., 101 Pa. 204; Boyd v. American Carbon Black Co., 182 Pa. 206; Pittsburg, etc., R. R. Co. v. R. R. Co., 196 Pa. 452; Bangor, etc., Ry. Co. v. Slate Co., 203 Pa. 6.

OPINION BY MR. JUSTICE STEWART, June 25, 1907:

We do not feel called upon to review specifically each of the thirty-nine assignments of error with which this case is burdened. It is enough to say, with respect to those which challenge the facts found by the learned judge, that upon a careful consideration of the evidence we see no ground for disturbing any of the findings. All have support in evidence that was clearly admissible; those least supported are inconsequential, while those material are amply sustained. We take the facts to be as found.

The plaintiff being the owner of a lot of ground contiguous to the defendant's railroad, agreed with the president of the railroad company that he would construct and operate upon the lot of ground a sawmill, on condition that the company would for a consideration of $50.00 convey to him a small adjoining lot, allow him to use still another lot for storing lumber, and would furnish him with siding conveniences for his use in shipping lumber. The contract was a verbal one, made in July, 1897. Every feature of it was complied with by the respective parties. The plaintiff built and operated his mill; the lot was conveyed to him by the company; and a disused siding was reconstructed for the purposes of the plaintiff's business. For nine years after the making of the contract, the parties enjoyed the benefit and advantage that each had expected to derive from the transaction; the plaintiff had the advantage of the conveniences, and the defendant the benefit of the increased tonnage. In May, 1906, the defendant, against the protest and remonstrance of the plaintiff, removed the siding without attempting to substitute other facilities for it, thereby requiring the plaintiff in the conduct of his business to haul by teams his lumber to and from the point of shipment.

The answer of the defendant to the bill filed denies that. the contract as above stated was made; but this fact having been found adversely to defendant's contention, the company sought to justify its removal of the siding by disavowing the act of its president, and denying his authority to bind the company. It is not pretended that there ever was any formal ratification of the contract by the board of directors of the company. It may be conceded that it was without the usual and authorized duties and powers of the president to make it. But the learned judge who heard the case concluded that, even though ultra vires, actual confirmation was to be presumed from the acquiescence of the company, and its long continued acceptance of the fruits and advantages of the bargain made in its behalf. In this he was abundantly justified by the evidence. We waive all consideration of the fact found by the learned judge, that the president was the virtual owner of the railroad company, having the entire property under his own personal control and management. Assuming that he stood toward it in no other relation than that of a salaried official, it is impossible to believe that those responsible with him in the direction and management of the affairs of the company were without the knowledge of the existence of the contract by and under which the short line of road in their control was receiving such benefit, especially so when the means provided by the company at its own expense, for the convenient shipment of the plaintiff's product, were so open and notorious. In Stirling v. Vaughan, 11 East, 619, Lord ELLENBOROUGH said: "The law will presume, if nothing appear to the contrary, that every person accepts that which is for their benefit." In Bank of U. S. v. Dandridge, 25 U. S. 64, Mr. Justice STORY said: "Grants and proceedings beneficial to a corporation are presumed to be accepted; and slight acts on their part, which can reasonably be accounted for only upon the supposition of such acceptance, are admitted as presumptions of fact." Our own cases are as explicit. It is only necessary to refer to the most recent on the subject: Presbyterian Board of Relief, etc., v. Gilbee, 212 Pa. 310. It is there said: "It is repugnant to every sense of justice and fair dealing that the principal shall avail himself of the benefit of the agent's act, and at the same time repudiate his authority. A corporation

may not avail itself even of ultra vires as a defense where a contract has been entered into and executed in good faith by the other party and the corporation has received the benefit of the performance."

The conclusion of the learned trial judge on the question of ratification does not depend in the slightest degree upon the disputed findings of fact; nor does it rest upon any testimony which was admitted under objection. It is clear upon the undisputed facts of the case.

The effort to justify the removal of the switch on the ground that it was dangerous, followed no attempt on the part of defendant to furnish the plaintiff with another not open to such objection, as it had a right to do under its contract. The company could not take advantage of such circumstance to escape the burden of its contract, except as it discharged the alternative burden it originally assumed in such contingency for the protection of the other contracting party.

We see no merit in any of the assignments of error.

The appeal is dismissed at the cost of the appellant, and the decree is affirmed.