## Collins *v.* Parkton Compound Boiler Co., Inc., Appellant.

Argued March 20, 1961. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Christopher T. Powell,* for appellant.

*Thomas M. Hart,* for appellee.

OPINION BY RHODES, P. J., June 15, 1961:

This is an action by the plaintiff, Russell E. Collins, Jr., against the defendant corporation for compensa-

tion for work performed in an executive capacity from February 13, 1957, to May 9, 1958. Defendant denied that plaintiff was employed in an executive or managerial capacity. The case was tried before President Judge HOBAN and a jury which returned a verdict for the plaintiff of $3,000. Defendant moved for a new trial, which motion was summarily denied, and, having filed a request for binding instructions at the trial, moved for judgment n.o.v. The court in banc dismissed the motion for judgment n.o.v., and defendant appealed to this Court from the judgment.

Defendant contends (1) that the evidence does not disclose any ratification by the board of directors of the appointment of plaintiff in an executive or managerial capacity as made by certain officers and stockholders of the company; (2) that plaintiff has not met the burden of proving a hiring, performance of managerial duties, or the value of his services in a managerial capacity; and (3) that the plaintiff cannot recover on quantum meruit for his services.

A review of the facts, viewed in a light most favorable to the verdict, discloses the following:

For some time prior to February 21, 1957, Collins had been employed as auditor for the defendant corporation, a relatively small operation in Clarks Summit. This corporation being in difficulties, Collins was requested to make recommendations. As a result of a conference with three of the officers of the company, who were also owners of the majority of the outstanding capital stock, Collins brought into consultation Leo A. Southard, Esq., a member of the Lackawanna County Bar. The officers of the company executed in writing the following document:

"February 21, 1957

"We, Mrs. Marion A. Brundage, J. Edward Parkton and Mrs. J. W. Townsend shareholders in the Parkton

Compound Boiler Company, Inc. owning 995 shares out of 1610 share[s] outstanding do hereby authorize Attorney Leo A. Southard and Russell [E.] Collins, Jr. to act for said corporation in any manner that they see fit subject to our approval.

"Mrs. Marion A. Brundage
"J. Edward Parkton
"Mrs. J. W. Townsend
"Marion W. Parce
  "Witness"

A meeting of the Board of Directors of the corporation was held on March 7, 1957. The minutes of this meeting stated:

"Also in attendance were Russell E. Collins, Jr. & Leo A. Southard, Attorney, who had been given authority February 21, 1957 to act for the Corporation to get us help in solving our difficulties, by Mrs. Brundage, J. E. Parkton, and J. W. Townsend, acting principal shareholders of outstanding stock."

The minutes of this meeting also show that Collins gave a report to the directors, disclosed several business matters pertaining to negotiations with patent owners, and asked for approval of the board to increase the capital stock. All of his recommendations were approved by votes of the board. The minutes also stated:

"Mr. Collins informed the Board that both he and Attorney Southard had agreed to give their service this year and take their payment in Capital Stock instead of money."

The board granted authorization for Southard and Collins to negotiate the present mortgage for a longer period. The board unanimously voted in favor of the authorization. It also appears that Southard served as president of the defendant company from July, 1957, to June, 1958, and worked with plaintiff in managing the defendant company. Southard testified that he was

paid $7,000 for his services to the defendant over the eighteen-month period.[1]

The annual meeting of the corporation was on March 28, 1957. The minutes of the meeting showed that Southard and Collins, each holders of one share of stock, were present at the meeting, and that the stock, represented either in person or by proxy, constituted a majority in interest of all the stockholders of the company. Collins, as stockholder, reported his audit for the past year. He then explained the proposed increase in capitalization, and moved to amend the by-laws to provide for such increase. The motion was carried unanimously. Collins moved to amend the by-laws to increase the number of directors from three to eight, which motion was carried unanimously. Collins stated that he and Southard "had been doing quite a bit of work for the Company to see what we can do to get the Company out of the doldrums and they felt that a complete re-organization was in order."

Collins then presented for election a complete slate of directors, including himself, and on his motion the slate was unanimously elected.

There are many other excerpts in the minutes which show that the activities of Collins were substantially more than that of an auditor. While there is nothing in the minutes to show that he was specifically designated as an officer of the corporation or given a spe-

---

[1] Southard testified as follows:

"Q. Mr. Southard, was there an understanding early in 1957 as to compensation for yourself and Mr. Collins? A. Yes. It was understood when we took over that since the Company was in such a hole financially, they couldn't pay us cash, that if we worked along and brought the Company along, we would be compensated with stock later on. Q. And was it understood that in the event that you could not be compensated in stock, that a bill would be rendered? A. That's right. Oh, yes. It was understood from the beginning that we weren't doing this as volunteers."

cific title, it is evident from the directors' meeting of March 7, 1957, that Collins was clearly regarded as a person of responsibility in the organization. In addition, oral evidence shows that Collins appeared at the plant on various occasions, gave orders, and acted in a manner clearly inconsistent with that of a subordinate or mere auditor, and that he and Southard managed defendant corporation during the eighteen-month period. Other interests subsequently purchased the defendant company.

A corporation may ratify unauthorized acts which are within the scope of its corporate powers. *White v. Phoenix Iron Works*, 283 Pa. 205, 210, 129 A. 71. Ratification may be made by formal action, or by passive acquiescence, but, in either event, such facts must be established as will warrant the proper finding. *De-Forest v. Northwest Townsite Company*, 236 Pa. 125, 131, 84 A. 674.

The facts indicate that Collins was hired to act for the corporation by those who held a majority of the stock. This matter was brought to the attention of the Board of Directors at their meeting on March 7, 1957. While it is true that the minutes do not indicate any formal action to adopt this act by the majority stockholders, it is also true that the directors took no action to disaffirm the powers granted. We feel that the facts demonstrate a contract for the employment of Collins and a ratification of that contract by the Board of Directors and the corporation. We also feel that, viewing the evidence as a whole, the testimony to support the plaintiff's position, if believed by the jury, was sufficient to sustain the burden of proof.

It has been held that a corporate officer cannot recover compensation for services rendered the corporation unless there was an express contract of employment before the services were performed. *Brophy v. American Brewing Company*, 211 Pa. 596, 597, 61 A.

123; *Culp v. Independent Card Corporation*, 99 Pa. Superior Ct. 275, 278. Plaintiff's evidence established a contract that these additional services were to be rendered for compensation. See *Chambers v. Beaver-Advance Corporation*, 392 Pa. 481, 490, 491, 140 A. 2d 808.

The court below, in an opinion by President Judge HOBAN, has adequately summarized the controversy:

"The real conflict in this case comes about in determining both the extent and value of Collins' services, but that over the period in question he performed many services cannot be challenged. The effect of this, or worth of such services is something else again and in presence of pro and con testimony was clearly a matter for the jury.

"The evidence on behalf of the defendant is largely negative in character, consisting of denials of Collins constant availability, the testimony tending to rebut the substantial value of his services and by argumentation, to sustain the theory that there was no effective ratification by proper action of the Board of Directors of any hiring of Collins. Viewing the testimony as a whole we cannot see that the testimony to support Collins' position, if believed, was not sufficient to sustain the burden of proof. In the end the burden of proof is a question which involves balancing credibility, weight and inferences, a basic problem for the jury. In our opinion no judge could have refused to submit this case to the fact finding part of the tribunal."

Matters not raised at the trial or in the court below cannot be asserted for the first time on appeal, and will not be further discussed in this opinion. *Schmidt v. Martz*, 161 Pa. Superior Ct. 439, 442, 55 A. 2d 588.

The judgment is affirmed.