**MCGUIRE PERFORMANCE SOLUTIONS, INC.,**
Appellee

v.

**Skip MASSENGILL, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 31, 2006.
Filed July 31, 2006.

Jeffrey S. Saltz, Philadelphia, for appellant.

Bradley R. Cornett, Bensalem, for appellee.

BEFORE: McCAFFERY, PANELLA, and JOHNSON, JJ.

OPINION BY McCAFFERY, J.:

¶1 Appellant, Skip Massengill, appeals from the judgment of the Court of Common Pleas of Philadelphia County in favor of Appellee, McGuire Performance Solutions, Inc., a Pennsylvania corporation ("McGuire" or "New McGuire"), and against Appellant, in the amount of $125,000. Specifically, Appellant asks us to determine whether (1) McGuire lacked the authority or standing to institute the present action; (2) the trial court erred by excluding certain evidence; and (3) the trial court erred by permitting McGuire to amend its complaint to conform to the evidence. After careful review of Appellant's issues, we affirm.

¶2 The trial court, sitting without a jury, made the following relevant findings of facts and conclusions of law, to which we add additional facts from the uncontested evidence of record. In March and April 1999, Appellant signed two promissory notes in the amounts of $50,000 and $75,000, respectively, each note payable to McGuire Performance Solutions, Inc., a Delaware corporation ("Old McGuire"). Appellant also executed a pledge agreement that listed a "Hartford Life Variable Annuity" as collateral to secure repayment of the loans. At the time Appellant signed the notes and pledge agreement, he was a director, corporate officer, and co-founder of Old McGuire. The promissory notes provided that Appellant was to make quarterly payments of interest until maturity on June 30, 2004, at which time he was to repay the combined principal balance of $125,000.

¶3 Old McGuire had originally been incorporated in the State of Delaware, but was "redomesticated" to Pennsylvania in May 2001, when the principals of Old McGuire incorporated a Pennsylvania corporation with the very same name, to wit, McGuire Performance Solutions, Inc. ("New McGuire"). The assets of Old McGuire were transferred to New McGuire at a time when Appellant was still a director of Old McGuire. Old McGuire remained a Delaware corporation and changed its name to Iron Bridge Holdings, Inc. ("Iron Bridge"). Iron Bridge became the holding company for New McGuire and one other wholly owned subsidiary.

¶4 In March 2002, at a point in time when Appellant's employment with New McGuire had been terminated, New McGuire demanded that Appellant surrender the annuity that Appellant had pledged as collateral for the loans. By that time, however, Appellant had already cashed in the annuity and no longer possessed the proceeds. Appellant's failure to tender the agreed-upon collateral upon request was an event of default under the pledge agreement. This default permitted the secured party named in the pledge agreement (Old McGuire or its assigns) to

immediately demand payment of all outstanding monies owed under the promissory notes, including their principal amounts. Accordingly, New McGuire instituted the present action to collect the principal amounts due under the promissory notes, plus costs and attorneys' fees.[1]

¶ 5 During the course of trial, the promissory notes matured, and Appellant failed to repay the principal amount of the loans or timely cure his default. This fact emerged at trial during the testimony of one of McGuire's witnesses. Over Appellant's objection, McGuire orally moved to amend its complaint to allege that Appellant was also in default for failure to repay the overdue principal owed under the promissory notes, in addition to the original allegation that Appellant had defaulted by failing to tender the agreed-upon collateral. The court overruled Appellant's objection and permitted McGuire's amendment.

¶ 6 At trial, Appellant admitted that he had failed to tender the collateral securing the promissory notes upon request, and further admitted that he had failed to repay the overdue principal balance of the notes. However, he continued to oppose McGuire's action on legal grounds. First, Appellant challenged McGuire's legal authority to bring this action because it had failed to plead and prove that the assets of Old McGuire (which included the subject promissory notes and pledge agreement) had been assigned to New McGuire. Second, Appellant argued that McGuire had failed to prove that it had board authority to bring an action for recovery of monies allegedly due under the promissory note, as there was no proof that its board of directors had authorized the lawsuit.

Third, Appellant argued that McGuire had waived its demand for the pledged collateral because the demand was made three years after the pledge agreement had been executed. Finally, Appellant argued that it was error for the trial court to allow the oral amendment to McGuire's complaint alleging that Appellant had defaulted under the notes by failing to pay the principal balance when it became due.

¶ 7 The trial court rejected all of Appellant's arguments. Although the court agreed that McGuire had never alleged in its complaint that it had been assigned the promissory notes and pledge agreement by Old McGuire, the court determined that credible trial evidence "proved and established the basis for [McGuire's] claim." (Trial Court Amended Findings of Fact and Conclusions of Law, dated December 20, 2004, at 2). Further, the court found that Appellant had "repeatedly made the quarterly interest payments to [New] McGuire, without any assertion that he was paying the wrong payee." (*Id.*).

¶ 8 The trial court also determined that the president of a corporation could, as here, act on behalf of a corporation by instituting suit to collect the corporation's debts without the need for approval from the board of directors, citing as authority a court of common pleas decision.[2] The court also noted that there was no evidence indicating that McGuire's board of directors had resolved to prohibit or end the suit against Appellant.

¶ 9 Finally, the trial court determined that the plain language of the pledge agreement provided that a failure by the secured party to exercise any right or power under the agreement would not be

---

1. Appellant never defaulted under the requirement to provide quarterly payments of interest, and continued to pay interest until the notes matured.

2. *Harcourt Wells, Inc. v. Cohen,* 6 Pa. D. & C.3d 183 (Phila.Cty.1978).

considered a waiver or impairment of any such right or power. Therefore, the court rejected Appellant's argument that McGuire had waived its right to demand the collateral.

¶ 10 As the evidence showed that Appellant had defaulted under both the notes and the pledge agreement, and as no legal impediment existed to prevent McGuire from pursuing all available remedies for such default, the trial court entered judgment for McGuire and against Appellant in the combined face amount of the notes, specifically $125,000. The trial court denied McGuire's request for attorneys' fees.

¶ 11 Appellant filed a timely appeal in which he raises the following four issues:

1. Where [McGuire] is suing to recover under Promissory Notes in which [McGuire] was not the original payee but allegedly acquired the Notes from the original payee, may [McGuire] be relieved of the requirement that an assignment be pleaded and proved by arguing that [Appellant] was already aware of the assignment?

2. Where the authority of a corporate officer of [McGuire] to bring suit on behalf of the corporation is in question, does the trial court err in excluding [Appellant's] testimony of a statement made by a corporate director of [McGuire] on the issue?

3. Where [Appellant] has admittedly been current on his Promissory Notes and fails to make timely payment for the first time only fifteen days prior to trial, and where [McGuire] has not given the written notice of default to [Appellant] required in the Notes, may the trial court nevertheless permit [McGuire] in the middle of trial to add a new cause of action for failure to make the required payment?

4. Where a secured lender does not demand delivery of collateral under a Pledge Agreement for three years, can the lender avoid waiver of its rights under a boilerplate provision in the Pledge Agreement that delay in exercising its rights shall not be considered a waiver?

(Appellant's Brief at 2).

■ ¶ 12 Appellant first argues that the trial court erred by allowing McGuire to maintain an action against Appellant when (1) McGuire was not a party to the pledge agreement and was not the named payee of the promissory notes, and (2) McGuire did not allege, nor did it prove, that it was the assignee of the agreement and the notes. As this issue is one of law, "we are not constrained by the determination of the trial court; our standard of review is *de novo*." *Jones v. Rivera,* 866 A.2d 1148, 1150 (Pa.Super.2005).

¶ 13 In support of its argument, Appellant relies upon *Brown v. Esposito,* 157 Pa.Super. 147, 42 A.2d 93 (1945). Such reliance is misplaced. Appellant argues throughout his brief that *Brown* established a "plead and prove requirement" where the real party in interest to an action, which had acquired its enforceable rights by assignment, must allege the assignment in the complaint and prove the fact of assignment during the course of the trial. Appellant also apparently believes that such "requirement" admits of no exception. (*See* Appellant's Brief at 10–17). Appellant misapprehends *Brown,* however, as it did not articulate the sweeping requirement that Appellant asserts. Rather, the legal principle enunciated in *Brown* is simply, and logically, as follows:

When suit is brought against the defendant by **a stranger to his contract**, he is entitled to proof that the plaintiff is the owner of the claim against him. This

protection must be afforded the defendant. *Otherwise, the defendant might find himself subjected to the same liability to the original owner of the cause of action, in the event that there was no assignment.*

*Id.* at 94 (emphases supplied).

¶ 14 Here, McGuire was not a "stranger" to the notes or the pledge agreement, and Appellant was certainly not a "stranger" to McGuire. Indeed, Appellant acknowledged the authority of Iron Bridge, the immediate corporate successor to Old McGuire, *to control the lawsuit instituted by New McGuire* for recovery under the notes and pledge agreement. In a letter dated July 13, 2004, to the directors of Iron Bridge, Appellant proposed that the directors consider an offer of settlement he had made to avoid spending "Company money" in pursuit of an action that would "at best result in the Company obtaining a worthless judgment against me." (Trial Exhibit P–5, at 1; R.R. at 152a). In this letter, Appellant appears to define "Company" as including Iron Bridge and its wholly owned subsidiary, New McGuire. Appellant defined himself in the letter as "Co–Founder, Past Board member and current shareholder" of the "Company." (*Id.*). Testimony later taken at trial, and obviously found to be credible by the trial court, established that Iron Bridge, the former Old McGuire, is "merely a holding company," lacking employees and assets, and that all assets are held by Iron Bridge's subsidiaries. (Notes

of Testimony ("N.T."), 7/15/04, at 31). Testimony found credible also established that "[t]he assets were transferred from the old McGuire Performance Solutions to the new McGuire Performance Solutions." (*Id.* at 29).

¶ 15 Thus, the harm that the *Brown* holding sought to avoid is not present in the case *sub judice*. There is no danger that Appellant, now subject to a judgment in favor of McGuire, would in the future be subject to a judgment in favor of Iron Bridge for default under the same promissory notes and pledge agreement. Certainly, should Iron Bridge proceed with such an action, Appellant's defenses against the action would be unassailable. Further, the record satisfactorily establishes that it is New McGuire which holds the notes and rights under the pledge agreement. Accordingly, we determine that the trial court did not err by rejecting Appellant's argument that McGuire is not the real party in interest, or that McGuire has failed to prove that it is the real party in interest.[3]

¶ 16 Appellant's second argument on appeal is that the trial court erred by excluding Appellant's testimony regarding a conversation he had with one of the directors of either Iron Bridge or McGuire.[4] Appellant contends that, if allowed, the director's testimony would have shown that the lawsuit had not been authorized by *McGuire's* board of directors and/or that the board was "deadlocked" on the issue of

---

3. We also note that the record shows that Appellant received correspondence from McGuire regarding his default and the payment of interest due. The correspondence links McGuire and Iron Bridge jointly as entities entitled to receive Appellant's payments under the notes. (Trial Exhibit D–1, at 1; R.R. at 153a). Appellant submitted no evidence that he was confused or had concerns with the identity of the entity to whom he owed money under the notes.

4. Curiously, Appellant never testified as to which company this individual served as director. Appellant testified only that this individual "was one of the directors and an investor in *our company*." (N.T. at 69; emphasis supplied). Appellant's testimony adds further proof that Appellant was not confused as to the real party in interest under the notes and pledge agreement.

pursuing a lawsuit against Appellant. Appellant cites *Seifert v. Dumatic Industries Inc.*, 413 Pa. 395, 197 A.2d 454 (1964), for the proposition that corporate officers are prohibited from taking action on behalf of the corporation where the corporation's board of directors is "deadlocked" as to whether such action should be pursued by the corporation.[5]

¶ 17 Once again, Appellant draws too sweeping a conclusion from his cited legal authority. In *Seifert*, one 50% shareholder of a corporation brought a shareholder's *derivative action* against the corporation and against the other 50% shareholder alleging breach of contract and fiduciary duty with respect to certain acts by the second shareholder. The precise issue in the case was whether plaintiff's counsel should be removed based upon a conflict of interest, as said counsel was also counsel for the corporation. Our Supreme Court held that as the nature of the lawsuit and countersuit essentially involved a dispute between the two 50% shareholders, there was no conflict of interest in corporate counsel representing one of those shareholders. In a footnote that is unquestionably dicta, the Court stated: "It appears that [the plaintiff] would not be able to sue [the defendant shareholder] in his capacity as president of [the corporation] despite the deadlock in the board of directors." *Id.* at 400 n. 6, 197 A.2d at 456 n. 6. It is this footnote on which Appellant principally relies for his argument.

¶ 18 Nothing in *Seifert* stands for the proposition that Appellant appears to advance: that lack of proof that McGuire's board of directors authorized the lawsuit against Appellant, or, in the alternative, proof that the board was deadlocked on the issue of the corporation's lawsuit against him, allows Appellant to raise an absolute defense to the present action. Further, it must be noted that Appellant had not been sued in his capacity as a shareholder, nor did he bring a countersuit in the nature of a shareholder's derivative action challenging the actions of McGuire's corporate officers. Rather, *McGuire sued Appellant as a third-party debtor to the corporation* who had defaulted on his debt and security instruments. Even if McGuire's board of directors had not passed a resolution authorizing McGuire's president to institute the present lawsuit, Appellant cites no authority that this circumstance gives him standing to assert as a legal defense that McGuire's president acted beyond his authority, where the lawsuit was instituted to recover monies owed to the corporation by Appellant in Appellant's role as a third-party debtor to the corporation.

¶ 19 Moreover, we must observe that the present lawsuit commenced on September 23, 2002, went to trial on July 15, 2004, and was argued on appeal before this Court on January 31, 2006. At no time during this period of three years and four months has McGuire taken any corporate action to discontinue the action. As we have held:

5. McGuire objected to the introduction of this evidence on the grounds that it constituted inadmissible hearsay. Appellant argued that the testimony would be admissible under Pa. R.E. 803(25)(D) as an out-of-court statement made against a party by an agent of that party concerning a matter within the scope of the agency and made during the existence of the agency relationship. The trial court did not explicitly rule on the hearsay challenge, but appeared to exclude the testimony because it would have been cumulative or unnecessary. The trial court accepted the fact that no evidence had been submitted regarding the directors' authorization of the lawsuit, and it further opined that it would accept the possibility that an individual director could have been unhappy about the costs of litigation. (N.T. at 69–70).

A corporation may ratify unauthorized acts which are within the scope of its corporate powers. Ratification may be made by formal action, *or by passive acquiescence*, but, in either event, such facts must be established as will warrant the proper finding.

*Collins v. Parkton Compound Boiler Co.*, 195 Pa.Super. 364, 171 A.2d 576, 579 (1961) (citations omitted; emphasis supplied). Here, McGuire and its parent company have, by virtue of their three and one-third year pursuit of this lawsuit, certainly ratified the corporate action by passive acquiescence if not by formal action. *See also Pannebaker v. Tuscarora Valley R. Co.*, 219 Pa. 60, 64, 67 A. 923, 924 (1907) (holding that even without formal ratification by a board of directors, corporate "confirmation [of an action] was to be presumed from the acquiescence of the company" to such action). Therefore, under the factual scenario of the case *sub judice*, Appellant cannot assert as a defense the argument that McGuire's action to recover the debt that Appellant owes as a private individual is barred by lack of evidence of board approval.

¶ 20 Appellant's third argument on appeal is that the trial court erred by permitting McGuire to orally amend its complaint to allege that Appellant was in default on the promissory notes because of his failure to pay their principal balances when they became due. It is Appellant's contention that McGuire's allegation of non-payment constituted a new cause of action rather than a simple modification of the factual allegations relevant to the original action. For this reason, Appellant asserts that the trial court was without authority to allow an amendment of the complaint.[6] Appellant further argues that McGuire's cause of action against him for failure to tender payment under the notes had not ripened by the time of the trial, as the relevant provisions in the notes require that McGuire send written notice of default to Appellant and then allow him ten days thereafter within which to cure the default. McGuire had sent no formal notice of default to Appellant by the time the trial court allowed the amendment, or apparently at any other time while the record remained open.

■ ¶ 21 Appellant's arguments are without merit for several reasons. First, and most importantly, Appellant's issue is moot as the evidence at trial conclusively proved that Appellant was in default under the pledge agreement for failure to surrender the named collateral, thus establishing the basis for the trial court's judgment in favor of McGuire. In other words, no matter what the resolution of Appellant's third issue might be, the judgment against him would nevertheless remain valid because McGuire's original allegations were proven and McGuire is entitled to relief on that basis alone.

■ ¶ 22 Second, Appellant misperceives the law concerning the prohibition against allowing an amendment of a complaint when such amendment asserts a new cause of action. Our case law prohibits such amendments only after the statute of limitations has run. *See Laursen v. General Hospital of Monroe County*, 494 Pa. 238, 241–44, 431 A.2d 237, 239–40 (1981) (holding that amendments of pleadings to conform to the evidence presented at trial are to be liberally allowed to secure a determination of cases on their merits, provided that the granting of the amendment would not introduce a new cause of action *after the statute of limitations had run* ). In the case *sub judice*, there

**6.** Appellant concedes that McGuire would have been free to file a second complaint alleging breach for failure to make payment under the notes. (Appellant's Brief at 23).

was no issue concerning the expiration of the limitations period for a cause of action based upon Appellant's failure to tender payment under the notes.[7]

■ ¶ 23 Third, we have recognized that a variance between the pleadings and the evidence adduced at trial is not material if the alleged discrepancy causes no prejudice to the adverse party. *Reynolds v. Thomas Jefferson University Hospital,* 450 Pa.Super. 327, 676 A.2d 1205, 1210 (1996). Here, Appellant has failed to identify any prejudice resulting from the trial court's ruling permitting McGuire to amend its complaint to conform to the evidence. There is no dispute that Appellant failed to tender payment under the notes when due and that Appellant failed to cure its default at any time during the proceedings.

■ ¶ 24 Finally, we perceive no abuse of discretion regarding the trial court's determination that its decision would serve as written notice to Appellant of his default under the notes, with the allowance of a ten-day period following the decision within which Appellant could effect a cure. (*See* Appellant's Brief at 23). As already noted, Appellant admitted at trial that he had failed to pay the principal balance of the notes when due or at anytime afterwards, and he further admitted in his letter to the directors of Iron Bridge dated July 13, 2004, that he would not or could not pay the balance. (Trial Exhibit P–5, at 1; R.R. at 152a). Therefore the issue of *notice* of default is simply not present. Appellant clearly was on notice of his default, and the trial court reasonably and magnanimously provided Appellant the opportunity to cure his default. For these many reasons, Appellant's third argument on appeal is wholly without merit.

■ ¶ 25 Finally, in his fourth argument on appeal, Appellant contends that McGuire had waived its right to demand the surrender of Appellant's collateral by not exercising this right for two years and eleven months following the execution of the pledge agreement. As evidenced by a portion of his testimony, Appellant argues that because of McGuire's alleged lack of action, he felt free to cash in the annuity for his personal needs. Appellant cites to the Pennsylvania Legal Encyclopedia for the general proposition that: "[w]here one party to a contract leads another to act in a reasonable belief that the former will waive certain rights under it, the former will not be permitted to insist upon those rights to the injury of the person misled." (Appellant's Brief at 25, citing 23 P.L.E.2d *Estoppel* § 54 (2002)).

¶ 26 Appellant also denigrates as "boilerplate" language the express provision in the pledge agreement providing that any delay or omission by McGuire or its predecessor to exercise any of its rights or powers under the agreement will not act or be construed as a waiver of its rights or powers. *Without citation to authority,* Appellant contends that such "boilerplate" provisions may not be used to "eviscerate" the doctrines of equitable estoppel or waiver. (Appellant's Brief at 25).

¶ 27 Nothing in the record supports Appellant's contention that he was misled, reasonably or otherwise, by Old McGuire, New McGuire, Iron Bridge, or any other person or entity into believing that the collateral would never be demanded or

---

7. Appellant was required to tender payment by June 30, 2004. The trial court ruled on July 15, 2004, to allow *McGuire to amend its* complaint to allege that Appellant had defaulted under the terms of the notes by failing to tender payment on June 30, 2004. Indeed, Appellant takes the position that McGuire's cause of action had not yet ripened because of its failure to provide formal notice of default with a ten-day period to cure.

that, indeed, the pledge agreement would simply no longer have effect. Appellant attested to his belief that he cashed in the annuity within six months to a year after he signed the notes and the agreement. (N.T. at 48–49). By that point, the notes still had approximately four years to maturity. Therefore, the record does not support Appellant's asserted subjective belief that McGuire or its predecessor would not at some point demand the collateral, or at least demand the collateral's maintenance. Accordingly, there is no basis to conclude that McGuire's action or inaction could serve as a legal basis to "eviscerate" the clear terms of the pledge agreement to which Appellant had agreed.

¶ 28 For all of the foregoing reasons, and after careful review of the record and case law, we conclude that the trial court did not err in entering judgment in favor of McGuire and against Appellant. Accordingly, we affirm the judgment of the trial court.

¶ 29 Judgment affirmed.