JUSTICE RICE
dissenting.
¶105 The Court’s conclusion that the Board acted within its statutory authority when it required Visocan to assign its contractual rights against Federated in order to obtain reimbursement from the fund ignores our precedent and well-settled rules of statutory interpretation to draw a contrived meaning of the applicable statutes. Indeed, the Court concludes that the Legislature authorized the Board to pursue subrogation litigation on the basis of one single, solitary word in the statutory scheme. The conclusion is untenable, and I dissent.
*57 ¶106 As a preliminary matter, it should be noted that the Board argues that Federated lacks standing to challenge the Board’s subrogation of Visocan’s claims. The Court ignores this threshold issue. An obligor has the inherit right to challenge the underlying assignment of claims because subrogation, as a form of assignment, is governed by contract law and subject to the same requisites for validity as are other contracts. 6 Am. Jur. 2d Assignments § 118 (2007). Accordingly,
[w]hen suit is brought against the defendant by a stranger to his contract, he is entitled to proof that the plaintiff is the owner of the claim against him. This protection must be afforded to the defendant. Otherwise, the defendant might find himself subjected to the same liability to the original owner of the cause of action, in the event there was no assignment.
McGuire Performance Solutions, Inc. v. Massengill, 904 A.2d 971, 975-76 (Pa. Super. 2006) (emphasis in original omitted) (citing Brown v. Esposito, 42 A.2d 93, 94 (Pa. Super. 1945)). Therefore, “[i]n order for the assignee of contractual rights to maintain a cause of action, he must plead and prove the validity of his ownership of the claim.” Federal Deposit Ins. Corp. v. Barness, 484 F. Supp. 1134, 1150 (D. Pa. 1980). The validity of an assignment hinges on whether there was an assignable right. Restatement (Second) of Contracts § 324 (Comment a) (1981). Generally, contractual rights can be assigned unless (1) they materially alter the duty of the obligor, (2) the assignment is validly precluded by contract, or (3) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy-tide exception at issue here. Restatement (Second) of Contracts § 317(2) (1981). Where the contractual right is unassignable, the assignment is invalid. 6 Am. Jur. 2d Assignments § 8 (2007) (“[o]nly those assignments that are not contrary to express law, public policy, or good morals are valid”). The local law of the state governs whether the contractual right is assignable. Restatement (Second) of Conflict of Laws, §§ 208, 209 (1971).
¶107 Here, Visocan was required by the Board to assign any rights it had against its insurer, Federated, to the Board. Accordingly, Visocan became the assignor and the Board the assignee. Federated remained the obligor. The Board, as assignee, subsequently brought suit against Federated for reimbursement of corrective costs expended by the Board and covered under the insurance policy. Because an assignment occurred, thereby incorporating a stranger into the original insurance contract, Federated could rightfully challenge the *58 validity of the assignment. Allowing the current suit to proceed without determining the assignment’s validity may expose Federated to multiple suits on the same claim. Under the tenets of contract law, Federated, as the obligor, has the inherent right to challenge the validity of the subrogation on the basis that the assignment violates Montana law, i.e., that the statute does not permit the Board to subrogate Visocan’s contractual rights.
¶108 Turning to the merits of the subrogation issue, reaching the correct legal conclusion first requires a review of our law on this issue, which the Court largely ignores. When adopting a rule, the agency must comply with the requisites for rule validity codified in § 2-4-305, MCA, of the Montana Administrative Procedure Act. This section provides that “[w]henever by... statute a state agency has authority to adopt rules[,] ... a rule is not valid or effective unless it is: (a) consistent and not in conflict with the statute and (b) reasonably necessary to effectuate the purpose of the statute.” Section 2-4-305(6), MCA. In interpreting this statute, we have stated:
The courts have uniformly held that administrative regulations are “out of harmony” with legislative guidelines if they (1) “engraft additional and contradictory requirements on the statute” (citation omitted); or (2) if they engraft additional, noncontradictory requirements on the statute which were not envisioned by the legislature. [Emphasis added.] [Citation omitted in original.]
Board of Barbers v. Big Sky College, 192 Mont. 159, 161, 626 P.2d 1269, 1270 (1981) (citation omitted). Moreover, we have held that “Mules adopted by administrative agencies which conflict with statutory requirements or exceed authority provided by statute, are invalid.” Haney v. Mahoney, 2001 MT 201, ¶ 6, 306 Mont. 288, ¶ 6, 32 P.3d 1254, ¶ 6 (internal quotations omitted). See also State ex. rel. Swart v. Casne, 172 Mont. 302, 564 P.2d 983 (1977) (holding agency rules void because a statute cannot be changed by administrative regulations), overruled on other grounds, Trs. of Ind. Univ. v. Buxbaum, 2003 MT 97, 315 Mont. 210, 69 P.3d 663.
¶109 In first determining the statutory mandate given by the Legislature, it becomes particularly important to recall that our role “is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. For what the Legislature did not enact we may not allow the agency to implement. Thus, “we must pursue the intent of the Legislature and that intent is determined by interpreting the plain meaning of the language used.” *59 Saari v. Winter Sports, 2003 MT 31, ¶ 22, 314 Mont. 212, ¶ 22, 64 P.3d 1038, ¶ 22. Where the language used in the statute is “clear and unambiguous, the statute speaks for itself and we will not employ other means of interpretation.” Saari, ¶ 22.
¶110 With these principles in mind, I turn to the Court’s conclusions. The Court finds that Board’s authority to pursue subrogation “is established in the statutory scheme” which granted the Board “clear authority” to adopt its subrogation rule, Admin. R. M. 17.52.332(5). Opinion, ¶ 27. The entire basis for this “clear authority” is a single word within § 75-ll-313(2)(b), MCA, a financial accounting provision which creates the special revenue fund necessary to strictly account for the Board’s funds pursuant to § 17-2-102, MCA. This provision requires any grants, gifts and “reimbursements” to be deposited into that special revenue account. It is this accounting directive to deposit “reimbursements” into a special revenue account upon which the Court’s entire conclusion rests, for thereafter it simply points to the Board’s general ability to take legal action. However, the Board cannot conduct legal action for things it has not been authorized to do.
¶111 In its scouring of the statute for a word or snippet which could reflect the Legislative authority it desperately seeks, the Court misses the obvious: within the pages of details about the functions of the Board and the program, subrogation is simply not discussed and authorized. “Subrogation” is not mentioned at all, even within the provisions one would expect to find it: those enumerating the powers or duties of the Board and authorizing the Board to adopt rules. See § 75-11-318, MCA. Nor is there any other discussion anywhere in the statutes about the Board pursuing claims against insurers which could be deemed to be in the nature of subrogation. Claims against an owner’s insurer are simply not contemplated. Indeed, a “claim” is defined only as “a written request prepared and submitted by an owner or operator” for the “reimbursement of expenses caused by an accidental release!,]” § 75-11-302(5), MCA, and a “corrective action” is defined as the “investigation, monitoring, cleanup, restoration, abatement, removal and other actions necessary to respond to a release.” Section 75-11-302(6), MCA. “Third parties” are mentioned by the statute only for the purpose of authorizing reimbursement to owners who have made damage payments to third parties because of a spill. Section 75-ll-301(6)(b), MCA.
¶112 Yet-on the basis of this one word, “reimbursement” (in an accounting mechanism statute)-the Court concludes that the *60 Legislature “clearly authorized” the Board to force owners to transfer their insurance rights in order to qualify for reimbursement from the fund, and that the Board was thereafter authorized to pursue subrogation litigation on the basis of those assigned rights. Opinion, ¶ 27. If this is “clear authority,” then agencies have just been released to do just about whatever they want.
¶113 Of course, it is not “clear authority.” The action by the Board to require assignment of contract rights from owners is not authorized at all. Although the Court finds solace in the statute’s authorization for the Board to adopt “other rules [as] necessary,” § 75-ll-318(5)(f), MCA, this general provision does not expand the substantive powers delegated to the agency, but rather authorizes the adoption of rules for implementation of truly clear powers. In short, the Court has gone outside its duty “to ascertain and declare what is in terms or in substance contained” in the statute. Section 1-2-101, MCA.
¶114 Here, the reimbursement provision of the Act provides that, subject to the availability of funds, an owner, eligible under § 75-11-308, MCA, and compliant with both § 75-11-309, MCA, “and any rules adopted to implement those sections must be reimbursed by the board ....” Section 75-11-307(1), MCA (emphasis added). Section 75-11-307, MCA, clearly and unambiguously requires the Board to reimburse owners suffering an eligible spill so long as they have complied with §§ 75-11-308 and 309, MCA, and rules which would be properly adopted to implement these sections.
¶115 Admin. R. M. 17.58.332 is inconsistent with these statutory provisions and does not “implement” either § 75-11-308 or § 75-11-309, MCA. Regulation 17.58.332 contains the following provisions:
(1) Prior to receiving payment for any claim for reimbursement, an owner or operator who is determined to be eligible under 75-11-308, MCA shall thoroughly investigate the existence of any policy of insurance or other similar instrument which may indicate insurance coverage for some or all of the eligible costs arising from a release.
(5) To the extent the board may reimburse or has reimbursed owners or operators for eligible costs, the board has a subrogation claim against insurance carriers. whose policies cover the reimbursed costs and against other third parties whose acts or omissions render them otherwise liable for the reimbursed costs. An owner or operator who accepts the reimbursement for costs subrogates his rights to the board as against such *61 insurance carriers and other third parties to the extent of the accepted reimbursed costs. An owner or operator, prior to receiving reimbursement of eligible costs, must agree on a form provided by the board, to subrogate its claims to the board to the extent of the accepted reimbursed costs. [Emphasis added].
Admin. R. M. 17.58.332.
¶116 The above-highlighted portions of Admin. R. M. 17.58.332 illustrate the inconsistency between the Board’s adopted rule and the statutory requirements for reimbursement. Pursuant to Admin. R. M. 17.58.332, in order to receive reimbursement for an eligible claim, the owner must subrogate its claims against any insurance carriers or third parties to the Board. However, § 75-11-307, MCA, plainly has only four requirements prior to reimbursement: (1) there are funds available (not at issue here); (2) there was an eligible spill (not at issue here); (3) the owner complied with § 75-11-309, MCA, which maps the procedures for reimbursement of eligible costs (also not at issue here); and (4) the owner complied with any other rules adopted to “implement” §§ 75-11-308 and 309, MCA. There is no statutory requirement that prior to reimbursement an owner must assign his insurance claim to the Board.
¶117 Thus, contrary to the Court’s opinion, Admin. R. M. 17.58.332, does not “implement” either §§ 75-11-308 or 309, MCA. The term “implement” means “to carry out or perform.” American Heritage Dictionary 880 (4th ed. 2000). The term “implement” refers to the procedural tools the Board may use in effectuating §§ 75-11-308 and 309, MCA. Admin. R. M. 17.58.332 does not concern the procedural mechanisms the Board uses to “implement” either §§ 75-11-308 or 309, MCA, but rather adds an additional requirement that owners must fulfill prior to receiving reimbursement from the Board. Consequently, Admin. R. M. 17.58.332 conflicts with the statute and is invalid pursuant to § 2-4-305(6), MCA. Therefore, based on the plain language and meaning of § 75-11-307, MCA, the Board should have reimbursed Visocan for eligible costs without requiring Visocan to surrender its insurance claims to the Board.
¶118 The record reveals that the Board enforced Admin. R. M. 17.58.332 against Visocan-informing Visocan that further reimbursements would not be approved unless it assigned its insurance claims to the Board. While the Board’s purpose in enacting the rule is arguably an important interest in preventing “double dipping,” the Board lacks the statutory authority to enforce Admin. R. *62 M. 17.58.332. Under this Court’s precedent, the Board has engrafted additional requirements not envisioned by the authorizing statute. See Board of Barbers, 192 Mont. at 161, 626 P.2d at 1270. The Board has overstepped its statutory authority by requiring that owners subrogate its insurance claims to the Board before the Board reimburses eligible costs. Moreover, the Board’s rule frustrates the legislative purpose of reimbursement in numerous respects. For instance, the rule prevents an owner from exercising his contractual right to seek reimbursement from his insurer for costs not covered by the fund, such as here, Visocan’s statutory deductible of $17,500. This result was not envisioned by the Legislature. As such, Admin. R. M. 17.58.332 is invalid.
¶ 119 Consequently, any subrogation effected by the Board pursuant to Admin. R. M. 17.58.332 is invalid, including the assignment between Visocan and the Board. See Restatement (Second) of Contracts § 317(2)(b) (1981) (stating contractual rights are unassignable if forbidden by statute). Therefore, the remaining issues on appeal are moot because the Board cannot sustain a cause of action on the basis of an invalidly assigned contractual right.
¶120 I would reverse the District Court.